# EXHIBIT 5
# part 1 of 3

ORIGINAL COPY

MC-275

Name  Ignacio Polvos Pena

Address  CSP-Solano Unit-15-E2-Low

Post Office Box 4000

Vacaville, Calif. 95696-4000

CDC or ID Number  D-17862

**F I L E D**

NOV 2 2005

Court of Appeal - Sixth App. Dist.
By_____
DEPUTY

## IN THE CALIFORNIA COURT OF APPEAL

### SIXTH APPELLATE DISTRICT

*(Court)*

IN RE: IGNACIO POLVOS PENA

~~Petitioner~~

XX

ON HABEAS CORPUS

Respondent

**PETITION FOR WRIT OF HABEAS CORPUS**

No.  **H029497**

*(To be supplied by the Clerk of the Court)*

H016591   H017617   H004282

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Form Approved by the
Judicial Council of California
MC-275 [Rev. January 1, 1999]
Optional Form

PETITION FOR WRIT OF HABEAS CORPUS

THOMSON
WEST

Page one of six

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

This petition concerns:

[X] A conviction                    [X] Parole

[X] A sentence                      [X] Credits

[ ] Jail or prison conditions       [ ] Prison discipline

[ ] Other (specify): _____

1. Your name:  Ignacio Polvos Pena

2. Where are you incarcerated?  California State Prison Solano

3. Why are you in custody?  [X] Criminal Conviction    [ ] Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   Second Degree Murder with use of a firearm

   b. Penal or other code sections:  Cal.Pen.Code, §§187/189; 12022.5 and 1203.06

   c. Name and location of sentencing or committing court:  California Superior Court County of Santa Clara

   d. Case number:  96973

   e. Date convicted or committed:  10-20-1984

   f. Date sentenced:  11-12-1985

   g. Length of sentence:  15 years to life

   h. When do you expect to be released?  Uncertain

   i. Were you represented by counsel in the trial court?  [X] Yes.  [ ] No. If yes, state the attorney's name and address:

   Daniel V. Hernandez

4. What was the LAST plea you entered? *(check one)*

   [ ] Not guilty   [X] Guilty   [ ] Nolo Contendere   [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   [ ] Jury   [ ] Judge without a jury   [ ] Submitted on transcript   [ ] Awaiting trial

6. GROUNDS FOR RELIEF

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

CALIFORNIA'S BOARD OF PRISON TERMS CONTINUOUS DENIAL OF PAROLE BEYOND PETITIONER'S

STATUTORY MAXIMUM PAROLE ELIGIBILITY VIOLATED HIS STATE STATUTORY RIGHTS AND HIS

CONSTITUTIONAL DUE PROCESS AND EQUAL PROTECTION RIGHTS UNDER THE 14TH AMENDMENT

TO THE U.S. CONST. AND CAL. CONST. ART. I, §7, CONTRARY TO HIS UNDERSTANDING OF

THE TERMS AND BENEFITS OF THE GUILTY PLEA BARGAIN.

a. Supporting facts:
Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights *at what time (when)* or place *(where).* (If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)

On December 10, 1984, information was filed by the District Attorney of the

County of Santa Clara, State of California, accusing petitioner of a felony, to

wit a violation of Calif. Penal Code Section (PC§) 187 (Murder) in that on or

about the 20th day of October 1984, in the County of Santa Clara, State of

California, the said petitioner did unlawfully and with malice aforethought, kill

a human being. It was further alleged that at the time of and in the commission

of the foregoing offense, the said petitioner, personally used a firearm, to wit:

A handgun, within the meaning of §§ 12022.5 and 1203.06 of the PC. (See Exh. A,

pp. 1-2)

On October 20, 1984, in the early morning hours, police responded to a report

of a shooting outside Armando's Bar, in Palo Alto. The victim died later that

same day. The suspect fled the scene, but not before someone shot at the suspect's

car. A broadcast was made of the suspect's description and car. A short time

b. Supporting cases, rules, or other authority (optional):
*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

**PETITION FOR WRIT OF HABEAS CORPUS**

WEST GROUP
Official Publisher

SUPPORTING FACTS CONTINUED:

later Menlo Park police stopped petitioner as he was putting gas in a car matching
the description of the suspect car. There was a bullet hole in the petitioner's
gas tank and petitioner had a .38 caliber automatic pistol in his waistband with
a live round in the chamber and an empty clip. Petitioner was identify by two
witnesses in a drive by line up. Petitioner was arrested on October 20, 1984.
Petitioner was taken into custody and advised of his Miranda rights, which he
waived and agreed to talk to the police. Petitioner first denied being involved,
then admitted to being the shooter. A preliminary hearing was held on november
29, 1984, where petitioner was held to answer the charges. Petitioner pled not
guilty to the charges. Petitioner retained attorney Daniel Villanueva Hernandez
to represent him. After almost a year of delays, primarily caused by Mr.
Hernandez, petitioner changed his plea on advice of counsel. Pursuant to a plea
bargain, petitioner pled guilty to Second Degree Murder with the use of a firearm
on October 17, 1985. He did not appeal. On November 12, 1985, petitioner was
sentenced to 17 years to life imprisonment. (See Exh. B, pp. 1-2)

On October 17, 1985, a plea agreement was made in the Superior Court of the
State of California in and for the County of Santa Clara before the Honorable
Robert M. Foley, Judge, Department 5, filed on December 16, 1985. Appearances
for the People: Office of the District Attorney by: Rod Braughton, D.D.A.; for
the Defendant: Daniel Hernandez, Attorney at law; Spanish Interpreter: Evelyn
Aaron; Official Court Reporter: Barbara T. Ives, CSR No. 448. In significant
part the plea is as follows:

"THE COURT: Thank you. Mr. Hernandez?

MR. HERNANDEZ: Yes, Your Honor. We requested some discussion as to one
of the potential offers that the People have made to my client and that my client
is willing to -- is prepared to -- after some discussion, I think, to make to
the people. We are basically talked about second degree in this case. And he
has some matters or some questions that he would like to clear up before he changes
his plea, if that's what the People agreed to.

THE COURT: Now, wait a minute. My understanding -- I may be wrong, but
my understanding is that the People have made no offer.

MR. HERNANDEZ: Right.

THE COURT: This is an offer, as I understand it, by Mr. Pena to the People.

MR. HERNANDEZ: That's correct, Your Honor. I was just saying that we had
prior discussions revolving around the possibility of an offer. We are prepared
to make that offer as soon as my client is satisfied. He has some preliminary
questions that I wanted to discuss in chambers, but we decided to do it on the
record. There are some clarifications and reassurances from the Court that my

client wants before the offer is made.

THE COURT: You mean, you want a commitment from me that if the defendant did a certain thing and the People acceded to that, would I commit myself to certain things?

MR. HERNANDEZ: I think — We have explained to our client certain things in terms of the degrees and the time and the type of — the terms and punishment that apply to second degree. I think he has some certain questions that he wanted us to clarify, both with the people and with the Court for him. He may have some direct questions himself, prior to making the offer.

THE COURT: Well, would the People be at all interested in an offer by Mr. Pena to plead to a charge of second degree murder and admit the use of the firearm?

MR. BRAUGHTON: Your Honor, of Mr. Pena is willing to plead guilty exactly as charged in the Information, the People would consider stipulating that the murder is a murder of the second degree.

THE COURT: Fine. Thank you. What are Mr. Pena's concerns?

MR. HERNANDEZ: I think the consideration or the concern of Mr. Pena has been — from our discussions, is the gun allegation. If there was no gun allegation, I think — That was his basic concern, was that if there was no gun allegation in the second degree, that he would be more than willing to make offer formally.

THE COURT: In other words, then Mr. Pena is offering to plead to the count in the information on a stipulation that it's in the second degree, but he does not wish to admit the personal use of a firearm?

MR. HERNANDEZ: In all candidness, he is concerned about the additional term that would go along with that.

THE COURT: Two years.

MR. HERNANDEZ: That's his basic concern, from what I understood. Perhaps if he has his own questions, or I would be more than willing to stipulate that he could ask the Court directly himself if he wishes to. That is my interpretation of what his concern was.

THE COURT: You know what the law is. Two additional years are normally imposed for the personal use of a firearm. my understanding of the evidence in the case is that it will be demonstrated that he personally used a firearm in the commission of the murder. Assuming that there was a murder. I think, really, the only thing we are talking about is, is it a first or is it a second? If it's either one, I am kind of convinced that the evidence will demonstrate that a gun was used.

MR. HERNANDEZ: Perhaps, I think if the Court were to clarify to my client, not only to me but through their own understanding that it would be at this point impossible to entertain an offer without the gun allegation, perhaps we are at the point where we have to make that final decision.

THE COURT: That's a decision I think that you are going to have to make. Mr. Braughton has represented that he wants the defendant to admit everything contained in the Information. If the defendant will do that, he will stipulate that it is a murder in the second degree. I didn't misunderstand you, did I?

MR. BRAUGHTON: No, Sir.

THE COURT: So, I take it then, if you will, I wouldn't term it an offer by the people. If that's a word that you want to use, it's an offer to plead to a second and admit the use. And then, by law, that would place a maximum ceiling upon any punishment of no more than seventeen years to life in prison, as opposed to a first degree, which would be twenty-seven years to life.
(Off-the-record discussion between the defendant and his counsel.)

MR. HERNANDEZ: Your Honor, I think I have explained basically to my client the laws applied under Article 2.5 and Sections 2930 through 34 of the penal Code having to do with time and the reduction of time once he is sentenced or once he is sent to the Department of Corrections system. I think that in order to solidify my explanations to him, if the Court would be willing to reaffirm the possibilities of him getting good time, good behavior time, lessening the seventeen years to actual time that he is going to do of less than seventeen years, if he complies with the rules once he is sentenced, I think he wants to hear that from the Court in order to be reassured that that is the policy. not so much that it's guaranteed, but that that is the policy that — that if his behavior is good and he cooperates with the prison system in terms of his good time/work time, that he will be given the benefits of —

THE COURT: The problem I have with that is that's what the law is. It's written right there in the book.

MR. HERNANDEZ: I understand that. I just don't happen to have a Spanish version that he could read himself. He doesn't read English.

THE COURT: Would the Spanish interpreter help then? You read it in English to the Spanish interpreter.

MR. HERNANDEZ: We just talk to him at the side — Can we just have a little conference with him and explain it to him again?

THE COURT: I think we could go off the record at this point, take a recess. Just read it to the Spanish interpreter. She can read it to Mr. Pena. When you're through, let us know and we'll take the matter up again. ....
(The Court was in recess.)

THE COURT: Reconvening the matter of People versus Ignacio Pena. The record will reflect that all parties who were in the court when it recessed are once again in the court. Mr. Hernandez, I understand that Mr. Pena wishes to plead to the count so long as it is stipulated to be murder in the second degree, and he will admit the personal use of a firearm.

MR. HERNANDEZ: That's correct, Your Honor.

THE COURT: Very well. Mr. Pena, we are going to have a discussion regarding the rights you give up when you change your plea. if I use any language you do

SUPPORTING FACTS CONTINUED:

not understand, please interrupt me, indicate that, and I will attempt to clarify it. Is that agreed, sir?

THE DEFENDANT: (Through the interpreter) yes.

THE COURT: have any promises been made to you to induce you to enter your plea, other than the one stated on the record this morning? And the promises is that this is a plea to a murder stipulated to be in the second degree. Where there any other promises made to you?

THE DEFENDANT: No.

THE COURT: Turning to the consequences of your plea, you are advised if you are not a citizen, conviction of this offense may have the consequences of deportation, exclusion from admission or denial of naturalization.
Mr. Pena, for the offense of murder in the second degree, you may be punished by an indeterminate sentence of fifteen years to life in the State Prison.
You are admitting the allegation of a personal use of the firearm; that could increase that sentence by two additional years. So, the maximum punishment in your case would be seventeen years to life in prison. Do you understand that, sir?

THE DEFENDANT: Yes.

THE COURT: Once you have served the sentence imposed by the Court, you will be released on parole for a period of —

MR. BRAUGHTON: Potentially life-time parole, I believe.

THE COURT: You're right. Because it's an indeterminate term. Some day, they are going to correct that, I know. Sir, when you are released from prison, you will be placed on parole. The period of parole could extend for the duration of your natural life. That is a matter that is left in the hands of the Department of Corrections. It will be an administrative decision as to hoe long you shall remain on parole. Do you understand that, sir?

THE DEFENDANT: Yes, Your Honor.

THE COURT: How old are you, Mr. Pena?

THE DEFENDANT: Twenty-two years old.

THE COURT: What is your educational background; did you complete high school?

THE DEFENDANT: No.

THE COURT: What is the highest grade that you completed, sir?

THE DEFENDANT: Sixth grade in Mexico, elementary school in Mexico.

THE COURT: And before I accept the plea, I believe that there is a stipulation by the parties that the plea is to be accepted to an offense of murder in the second degree.

MR. BRAUGHTON:  So stipulated, your Honor, by the People.

MR. HERNANDEZ:  So stipulated, Your Honor.

THE COURT:  Very good.  Mr. Pena, your plea is accepted.  The Court finds that you have knowingly, intelligently and voluntarily waived your rights to jury trial, to remain silent, and to confront and to cross-examine the witnesses.
I find you understand the nature of the charge, the elements of the offense, possible defenses, and the maximum punishment that may be imposed." (See Exh. C, pp. 1-17.)

On November 12, 1985, the Court at sentencing in this case stated in significant part:

"As to the count, the defendant will be committed to the Department of Corrections for that, the term prescribed by law.  In addition thereto, he having personally admitted the use of a firearm during the commission of the offense, the court would impose two additional years.
Total term this information seventeen years to life.  The defendant shall receive credit for time served of 389 actual days and 194 days good time-work time for a total of 583 days.
When you're released, sir, you will be placed on parole for a period of could last for the term of your natural life, couldn't it, Mr. Braughton?

MR. BRAUGHTON:  Yes.

THE COURT:  You will be placed on parole for an indeterminate time.  Violation of any term or condition of your parole will result in one year incarceration in prison for each separate violation." (See Exh. D, pp. 1-6.)

On November 14, 1985, the petitioner was received in the California Department of Corrections (CDC).  The CDC calculated the credit on his term of imprisonment under Article 2.5 and sections 2930 through 34 of the PC, lessening the seventeen years to actual time that he is going to do of less than seventeen years, if he complies with the rules once he is sentenced, as explained by his trial counsel.

Petitioner's base term was calculated at November 14, 2002.  His maximum eligible parole date at April 9, 2001.  His minimum eligible parole date is May 18, 1995. (See Exh. E, p. 1.)

On November 18, 2002, just four days after the expiration of petitioner base term he appeared before the California Board of Prison Terms (BPT).  On this date the BPT deferred parole for two beyond his maximum base term.

Petitioner made objections to the hearing in that the Panel lack jurisdiction to deny his release on parole because of the law of PC §190 authorizing the reduction of his sentence by good-time work-time credits.  (See Exh. F, pp. 1-

SUPPORTING FACTS CONTINUED:

44.)

On January 2, 2003, petitioner filed an administrative appeal within the BPT. The appeal outlined petitioner's objections and statement made through his counsel at the November 18, 2002, parole consideration for "Life Prisoners" implementing PC §§3041 and 3042. The appeal requested that the BPT render its decision and order void for lack of subject-matter jurisdiction because the it has wrongfully extended its jurisdiction beyond the scope of its authority. Such order is a plain usurpation of power and denial of procedural due process. The grounds in significant part were as follows:

"The panel lacks jurisdiction to deny the prisoner his release on parole, because the law of Penal Code Section (PC§) 190 governs his sentence and authorizes behavior and participation credits; and was added by initiative measure approved by the voters on November 7, 1978, therefore, the hearing is invalid.
The Fourteenth Amendment to the United States Constitution and Article I, section 7 of the California Constitution, each guarantee that no person shall be deprived of life, liberty, or property without due process of the law, nor the equal protection of the laws.
This constitutional command requires an administrative agency who has been granted the authority to adopt rules and regulations to be (1) consistent and not in conflict with the provisions of the enabling legislation and (20 reasonably necessary to effectual its purpose. The administrative agency may not vary or enlarge the terms of such legislation, i.e., its rules and regulations must come within the scope of the authority conferred in order for the rules of regulation to be valid. Simply stated, the Board of Prison Terms (BPT) is without authority to redetermine the minimum term of imprisonment that was imposed upon the prisoner by statute nor deny his release date that was calculated under the PC §2932, subd. (b) by the Department of Corrections." (See Exh. F, pp. 45-47.)

On July 8, 2003, the BPT entered its decision on appeal that stated in part:
"1. The prisoner contend that the Board's interpretation of PC § 190 does not comport with the California Supreme Court decision in In re Jeanice (1980). **Appeal Denied:** The prisoner is both confused and mistaken. PC § 190 et seq. are the statutes that set out the various punishment for persons who commit murder. The Board does not have any reason to 'interpret' that statute.

The rules of the Board of Prison Terms have been approved by the Office of Administrative Law. The prisoner's hearing has been conducted pursuant to PC §§ 3041, 3042 and the Board's rules. Until the Board is specifically directed by the court to change or amend its procedures for conducting its hearings, these current laws and rules are applicable to the prisoner's case.

2. The prisoner contends that based upon the authority of the Determinate Sentencing Law (DSL) the Board has, 'No authority for fixing of terms of imprisonment within the minimum and maximum.'
**Appeal Denied:** The prisoner is mistaken. His case does not fall within the provisions of the Determinate Sentence Law (PC § 1170). He has been sentenced to prison pursuant to PC § 1168(b) for an <u>indeterminate term</u> of 17 years to Life. PC § 1168(b) provides the Board with the authority to set the term of the duration

a-6

SUPPORTING FACTS CONTINUED:

of the period of imprisonment. (Emphasis added)

Also, in the case of In re Rodriguez (1975) 14 Cal.3d 639, 651-652, the court said that it followed People v. Wingo (1975) 14 Cal.3d 169, in that a prisoner who had a maximum term which may be disproportionate to his individual culpability has a right to have his term fixed at a number of years that is proportionate to his offense. The maximum term for the prisoner's offense (i.e., life) is not disproportionate to his culpability. Therefore, he is not entitled to have his term fixed prior to a finding of suitability for parole. Board rules regarding its pre-suitability procedures were upheld in In re Seabock (1983) 140 Cal.App.3d 29 (Emphasis added)

3. The prisoner contends that the Board is required to set a parole date pursuant to PC § 1170.2(a) and PC § 2930 et seq.
**Appeal Denied:** The answer to the prisoner's contentions is found in appeal issue # 2, above." (See Exh. F, pp. 48-50.)

On April 10, 2002, petitioner filed an administrative appeal within CDC. The action requested was Declaratory and Injunctive relief; immediate release from CDC' custody; computation review; emergency processing of appeal to prevent further irreparable injury. The grounds for the appeal are set forth in full as follows:

"Appellant continuous confinement constitutes a deprivation of liberty without due process of law and in violation of equal protection of the laws guaranteed by the Fourteenth Amendment: The California Department of corrections (CDC) has improperly modified the appellant's term of imprisonment as established and imposed by Penal Code (PC) Section (§) 190, adopted by the voter initiative in 1978 (Prop. 7; the Briggs Initiative, which repealed former PC, §190).
    The Briggs Initiative is analogous to the California Uniform Determinate Sentencing Act of 1976 (DSA) provision PC, §1170.2. On July 1, 1977, California's DSA went into effect replacing the Indeterminate Sentencing Law (ISL).
    The purpose of the DSA is to achieve uniformity in sentencing. In keeping with the policy of uniform sentencing, the DSA further provides that Board of Prison Terms (BPT) must reset the prison terms for prisoners who had been sentenced under the ISL. Pursuant to PC, §1170.2(a) the BPT must then fix the parole date of the prisoner on the date calculated under PC, 1170.2(a), unless two members of the BPT determine that the prisoner should serve a term longer than that calculated. In that event, the PBT must give notice and a prompt hearing to the prisoner. The prisoner has the right to counsel and to be informed in writing of the reasons for the increase in his term over that computed in PC, §1170.2(a).
    Similarly, PC, §190(a) provides under the provisions of PC, §2930 et seq., a fixed parole release date for the appellant on the minimum term imposed under PC, §190.
    CDC' modification of the appellant's term of imprisonment in the state prison imposed pursuant to PC, §190 is beyond its jurisdiction, and constitute an invalid Legislative amendment to a law enacted by initiative. CDC' modification of appellant's term of imprisonment is the result of its administrative classification of appellant as a 'Life Prisoner.' A 'life prisoner' is administratively defined as a 'prisoner sentenced to life imprisonment, and without an established parole release date.' Thus, consequently includes appellant's sentence.

a-7

SUPPORTING FACTS CONTINUED:

CDC' classification is clearly erroneous and unauthorized. It is based upon the mischaracterization of the facts and laws of appellant's sentence and the ancient notions and theory of the former ISL, that appellant has a sentence for the maximum, which is no longer valid under the DSA.

Appellant argues that the CDC' calculation and classification modified the term of imprisonment imposed upon him which increased his sentence after his prison term had begun; that his release date was redetermined on account of misassumptions and facts overreaching the sentence of appellant who has consequently been deprived of his release date that is based on an arithmetical computation prior to the expiration of his potential maximum punishment because of 'good time' credit earned.

Appellant contends that he has a sentence for the minimum until and unless a competent tribunal reset it at a greater punishment.

The appellant is being confined in prison after he has completed the sentence imposed upon him by statute, because prison officials acting under color of state law, and whose acts or omissions in modifying his sentence caused deprivation of the appellant's right to a fair adversary proceeding in which to fully present his case before a competent tribunal." (See Exh. F, pp. 51-53.)

On April 24, 2002, California State Prison-Solano, filed its Informal Level Appeal Response stating in part as follows:

"You state you should be immediately released from California Department of Corrections (CDC) custody since you are not a 'Life Prisoner.' You are also requesting a computation review hearing.

You were received by CDC on November 14, 1985 from Santa Clara County, Case # 96973 for count 1 - murder 2nd degree with a term of 15 years to life with a two year enhancement for use of a firearm. Your total term is 17 years to life.

Penal Code (PC), Section 190, states in part, '...every person guilty of murder in the second degree shall be punished by imprisonment in the state prison for a term of 15 years to life.'

PC Section 1168 Fixing Term of Imprisonment, Section (b) states, 'For any person not sentenced under such provisions, but who is sentenced to be imprisoned in the state prison, including imprisonment not exceeding one year and one day, the court imposing the sentence shall not fix the term or duration of the period of imprisonment.'

PC Section 1170.2(e) states, 'In the case of any inmate who committed a felony prior to July 1, 1977, who would have been sentenced under Section 1168 if the felony was committed on or after July 1, 1977, the Board of Prison Terms shall provide for release from prison as provided for this code.' Your commitment offense is one of the crimes that remain under PC Section 1168 after July 1, 1977.

You requested a Computation Review Hearing on this appeal. This is not a Computation Review Hearing/Records issue. Per Administrative Bulletin 87/21, dated February 26, 1987, Subject: Haygood vs. Younger states in part, 'Inmates/parolees who are subject to the jurisdiction of the Department of Corrections may have a right to a Computation Review Hearing when they believe there is an error in the computation of a term of confinement or period of parole based upon the documentation in the records, and that adversely affects their term of confinement or period of parole.'

APPEAL: Denied." (See Exh. F, p. 54.)

SUPPORTING FACTS CONTINUED:

On May 8, 2002, petitioner filed for a Formal Level review of his appeal within CDC. The appeal stated in full:

"Staff's response omitted the material fact of the appellant's primary allegations: CDC under the duty of PC §2932(b) (As it was incorporated in PC §190 on Nov. 7, 1978) calculated his anticipated release date; and is restraining him of his liberty in violation of Due Process and Equal Protection of the Laws. COMPUTATION REVIEW REQUESTED." (See Exh. F, p. 51, 54.)

On June 7, 2002, California State Prison-Solano, filed its Second Level Appeal Response, Log # CSP-S-02-00820, which stated in significant part:

"An interview was conducted by Karen Elliot, Correctional Case Records Supervisor on May 17, 2002, at approximately 1530 hours in Facility 3 Program Complex.
You were sentenced to serve an indeterminate term of imprisonment. The issue at hand is your release from the Department of Corrections. You were advised that this is a Board of Prison Terms issue as outlined earlier in this response.
APPEAL: DENIED." (See Exh. F, pp. 55-57.)

On June 19, 2002, petitioner filed for a Director's Review. On August 21, 2002, the Director's Level Appeal Decision was filed. The appeal was denied.

The findings stated in significant part:

"A. FINDINGS: All documentation concerning this appeal issue was reviewed. The record clearly reflects that the appellant is ineligible for release from CDC. The appellant was committed to CDC, for a life-term sentence. The BPT determines parole dates for inmates with life-term sentences. The release date is determined by the BPT upon considering all case factors including the inmate's commitment offense, criminal history, incarceration behavior and suitability for release. The appellant's parole date rests with the BPT and his concerns should be presented to that panel during that review. Based upon the documentation reviewed by case records staff the appellant has received all of the time credits he is entitled within existing statutes and Departmental regulations. The appellant has not provided compelling argument to warrant modification of the decision reached by the institution.
B. BASES FOR THE DECISION:
California Penal Code Section (PC): 190, 1168, 1170.2
California Code of Regulations, Title 15, Section (CCR): 3043
C. ORDER: No changes or modifications are required by the institution.
This decision exhausts the administrative remedy available to the appellant within CDC." (See Exh. F, pp. 58-59.)

Although petitioner became eligible for parole release in 2/3 of the statutory base term through CDC' application of conduct credits, the petitioner is not actually considered for release by the BPT until he has served the California Code of Regulations (CCR) matrix base term appropriate to the offense as established by the BPT, which range from 15 to 21 years for second degree murder offense, and 25 to 33 years for a first degree murder offense. The exact matrix base term applicable depends on identifiable elements of the offense set forth

SUPPORTING FACTS CONTINUED:

in CCR § 2403 (b) and (c) Matrix. (See Exh. F, pp. 60-61.)

The minimum time in years for parole eligibility on matrix base terms with application of average credits to statutory base terms for first and second degree murder offenses has put petitioner in the first degree murder range of 25 years of 18.81 years. (See Exh. F, p. 62.)

Under the BPT' regulations the total period of confinement may be increased only for serious disciplinary offenses which occurred since arrival in prison but before a parole date is granted.  Only disciplinary offenses which might have resulted in rescission proceedings after a parole date has been granted shall affect the total period of confinement.  These offenses are specified in CCR §2451. (See Exh. F, pp. 63-64.)

7. **Ground 2 or Ground _____** *(if applicable)*:

N/A

a. Supporting facts:

N/A

b. Supporting cases, rules, or other authority:

N/A

MC-275 [Rev. January 1, 1999]                **PETITION FOR WRIT OF HABEAS CORPUS**    WEST GROUP
Official Publisher              Page four of six

8. Did you appeal from the conviction, sentence, or commitment?  ☐ Yes.  ☒ No.  If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"): _____

b. Result: _____    c. Date of decision: _____

d. Case number or citation of opinion, if known: _____

e. Issues raised:  (1) _____

(2) _____

(3) _____

f. Were you represented by counsel on appeal?  ☐ Yes.  ☐ No.  If yes, state the attorney's name and address, if known:

_____

9. Did you seek review in the California Supreme Court?  ☐ Yes.  ☐ No.   If yes, give the following information:

a. Result: _____    b. Date of decision: _____

c. Case number or citation of opinion, if known: _____

d. Issues raised:  (1) _____

(2) _____

(3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

_____  Claims are ripe for review  _____

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

SEE EXHIBIT "F"

_____

_____

_____

_____

_____

_____

_____

b. Did you seek the highest level of administrative review available?  ☒ Yes.  ☐ No.
*Attach documents that show you have exhausted your administrative remedies.*

MC-275 [Rev. January 1, 1999]

**PETITION FOR WRIT OF HABEAS CORPUS**

WEST GROUP
Official Publisher

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court? ☐ Yes. If yes, continue with number 13. ☐ No. If no, skip to number 15.

13. a. (1) Name of court: _Santa Clara Superior Court of California_

    (2) Nature of proceeding (for example, "habeas corpus petition"): _Habeas Corpus Petition_

    (3) Issues raised: (a) _Continuous denial of parole contrary to Petitioner's understanding_

              _of the terms and benefits of his plea agreement violates due process_

        (b) _and equal protection under both State and Federal Constitutions._

    (4) Result (Attach order or explain why unavailable): _Denied See Exhibit G_

    (5) Date of decision: _Jan. 04, 2005._

  b. (1) Name of court: _____

    (2) Nature of proceeding: _____

    (3) Issues raised: (a) _____

        (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

        _Post Plea Bargain Violation- Ripe for Review._

16. Are you presently represented by counsel? ☐ Yes. ☒ No. If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court? ☒ Yes. ☐ No. If yes, explain:

_Habeas Petition for Judicial Declaration of Administrative Regulations._

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

        _This Court has Jurisdiction_

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: _10-30-05_     ▶ _(signature)_

                              (SIGNATURE OF PETITIONER)

STATEMENT OF ALLEGATIONS

PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, Ignacio Polvas Pena, propria persona, petitions for a writ of habeas corpus and by this verified petition allege the following:

I

Petitioner is unlawfully incarcerated and restrained at California State Prison (CSP) at Solano, Vacaville, California, by the Director of California Department of Corrections, pursuant to a judgment pronounced by the Santa Clara County Superior Court, in action number CR-96973.

II

Petitioner suffers from illegal restraint because he has been deprived of the benefits of his guilty plea bargain in violation of his constitutional due process under both the state and federal constitutions in that the BPT has denied his parole release beyond the seventeen (17) years he was informed he would receive by trial counsel and approved by the Court.

III

Petitioner was under the understanding that his plea bargain under the penalty statute imposed seventeen years, two years for the firearm, and not a natural life sentence or a life-term or that he was a "Life Prisoner" sentenced to life with the possibility of parole, but that he would be paroled on or before seventeen years for his natural life.

IV

The CDC' position that petitioner's sentence and offense after July 1, 1977, relying on PC § 1170.2(e), is one that remain under PC § 1168 is clearly erroneous in that the sentence for a offense of second degree murder committed after July 1, 1977, was five, six or seven years, and

7

1  not subject to the BPT' jurisdiction.

2                                    V

3       The Bpt' position that the provision PC § 1168(b) authorizes it to

4  determine the term of duration of petitioner's sentence is clearly erroneous

5  in that this statute speaks to the Court, not BPT, at sentencing, and that

6  there is only one term fixing provision in the DSA that authorizes the

7  BPT to determine or redetermine terms of imprisonment which is PC §

8  1170.2(a) and (b) which is not applicable to petitioner's offense committed

9  after July 1, 1977.

10                                   VI

11      Under the current and prior sentencing scheme the correct rule of

12  law which must be applied to petitioner is the "Less Than For Life" rule

13  which is a result of the postconviction credits and minimum term of 15

14  years imposed under his penalty statute PC § 190(a) by the CDC.

15                                   VII

16      Under the BPT' "Life Prisoner" parole consideration hearings petitioner

17  was denied the appropriate due process procedures for fixing or refixing

18  his sentence between the minimum and maximum or beyond the 15 years imposed

19  by PC § 190(a).

20                                  VIII

21      The appropriate remedy under these circumstances is specific

22  performance of the plea agreement as petitioner understood it which would

23  entitled him to immediate release on life parole.

24                                   IX

25      This petition is being presented in the first instance to the

26  sentencing court, under its original jurisdiction, because petitioner's

27  due process rights does not only attach to the acceptance of the guilty

28  plea but to its enforcement as well.

                                     8

Wherefore, Petitioner respectfully request that this Court:

1. Issue its order to show cause to the Director of the Department of Corrections to inquire into the legality of petitioner's present incarceration;

2. After a full hearing, issue the writ vacating the order of the BPT denying parole release based on the "Life Prisoner" parole consideration with instruction to grant release from CDC;

3. If there are any disputed facts for the Court to conduct an evidentiary hearing to determine petitioner's understanding of the terms of the plea bargain as informed by trial counsel on and off record and approved by the Court;

4. Appointment of counsel (In re Clark (1993) 5 Cal.4th 750, 779.);

5. Grant petitioner whatever further relief is appropriate and in the interest of justice.

Dated: 10-30-05                    IGNACIO POLVOS PENA/PETITIONER

## VERIFICATION

I am the petitioner in this habeas corpus action proceeding In propria persona, I have read the foregoing Petition for Writ of Habeas Corpus, Supporting Facts and Argument in Support Thereof and am informed and believe the matter therein to be true and on that ground allege that the matters stated therein are true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at CSP-Solano, Vacaville, California, on:

Dated: 10-30-05                    IGNACIO POLVOS PENA/PETITIONER

9

### ARGUMENT AND

### POINTS AND AUTHORITIES

I

### THE REQUIREMENTS OF DUE PROCESS ATTACH ALSO
### TO IMPLEMENTATION OF THE BARGAIN ITSELF

The Supreme Court has thus recognized that due process applies not only to procedure of accepting the plea (Boykins v. Alabama (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709].), but that the requirements of due process attach also to implementation of the bargain itself. It necessarily follows that violation of the bargain by an officer of the state raises a constitutional right to some remedy. (People v. Mancheno (1982) 32 Cal.3d 855, 860.)

When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled. (See Mabry v. johnson (1984) 467 U.S. 504, 509, 104 S.Ct. 2543, 81 L.Ed.2d 437; Santobello v. New York (1971) 404 U.S. 257, 262 [30 L.Ed.2d 427, 433, 92 S.Ct. 495].) When the prosecutor breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand. (Mabry, 467 U.S. at 509.)

This Court must determine what petitioner reasonably understood to be the terms of the agreement when he entered the plea. (See United States v. De la Fuente 8 F.3d 1333, 1337, 1338 (9th Cir. 1993); United States v. Quan 789 F.2d 711, 713 (9th Cir. 1986).) That determination is a question of fact. (Quan 789 F.2d at 714.) The benefit of an evidentiary hearing during which the record could be developed regarding any discussions or advice which occurred off the record should be given adequate consideration.

Whether the prosecutor actively misled petitioner, or more likely,

10

1  simply knowingly allowed petitioner to proceed on the basis of a

2  misapprehension regarding the sentence he would receive, the prosecution

3  must fulfill petitioner's reasonable understanding of the plea agreement.

4  (See United States v. Hallam 472 F.2d 168, 169 (9th Cir. 1973).)

5      Petitioner in this case pleaded guilty in exchange for a 17 years

6  to life sentence.  The benefit to petitioner, granted by the state in

7  exchange for his plea, was that he would not get 25 years to life for first

8  degree murder and would do no more than 17 years and possibly less than

9  17 years as reduced by credits.  At the time petitioner agreed to waive

10  his rights in exchange for this benefit he was not informed by the trial

11  counsel, prosecutor or Court that he would be sentenced to life with the

12  possibility of parole.

13      In determining whether petitioner understood the consequences of his

14  plea and life imprisonment was properly imposed and, if not, the appropriate

15  remedy to correct the error, requires consideration of two related but

16  distinct legal principles. (See People v. Glennon (1990) 225 Cal.App.3d

17  101, 104.)

18      The first principle concerns the necessary advisement whenever a

19  defendant pleads guilty, whether or not the guilty is part of a bargain.

20  The defendant must be admonished of and waive his constitutional rights.

21  (See Boykins v. Alabama, supra.; 395 U.S. 238; In re Tahl (1969) 1 Cal.3d

22  122.)  In addition, and pertinent to this case, the defendant must be

23  advised of the direct consequences if the plea. (See Bunnell v. Superior

24  Court (1975) 13 Cal.3d 592, 605.)

25      The second principle is that the parties must adhere to the terms

26  of a plea bargain. (See People v. Mancheno, supra., 32 Cal.3d 855, 860.)

27      Absent a PC § 1192.5 admonition, a defendant's "failure affirmatively

28  to request a change of plea should not be deemed a waiver of his right

11

1  to do so.  Since he was never advised of his rights under PC § 1192.5,

2  he should not be held to have waived them." (See <u>People v. Johnson</u> (1974)

3  10 Cal.3d 686, 872.)

4  ### PETITIONER IS ENTITLED TO A REMEDY

5  The two available remedies are rescission of the agreement and specific

6  performance. (See <u>United States v. Olesen</u> 920 F.2d 538, 540 (8th Cir. 1990)

7  By serving beyond his entire base term petitioner has met the terms

8  of the agree upon bargain, and paid in a coin that the state cannot refund.

9  Rescission of the contract is impossible under such circumstances;

10  petitioner cannot conceivably be returned to the status quo ante.  That

11  leaves specific performance as the only viable remedy. (See <u>United States</u>

12  <u>ex rel. Ferris v. Finkbeiner</u>, 551 F.2d 15, 17 (7th Cir. 1977) (cert. denied,

13  435 U.S. 932 (1978))

14  While it can be argued that only the BPT has the authority to reduce

15  a sentence, this rule cannot trump the constitutional consideration that

16  the BPT' discretion may apply only to those who are legitimately imprisoned.

17  Petitioner has served the agreed upon term for his crime, and more.

18  The oldest purpose of the Great Writ is as "a swift and imperative remedy

19  in all cases of illegal restraint or confinement." (See <u>Fay v. Noia</u>, 372

20  U.S. 391, 400 (1963); <u>Blackledge v. Allison</u>, 431 U.S. 63, 72 (1977) ("[T]he

21  very purpose of the writ of habeas corpus [is] to safeguard a person's

22  freedom from detention in violation of constitutional guarantees.").  The

23  state has no further lawful authority to hold him in prison on this charge.

24  ### THE PUNISHMENT IMPOSED BY PC § 190 IS LESS THAN FOR LIFE

25  PC § 190 is an initiative measure which cannot be modified by

26  subsequent legislative enactment not having the requisite majority for

27  altering a voter initiative. (See <u>In re Oluwa</u> (1989) 207 Cal.App.3d at

28  445-446; See Cal. Const., art. II, § 10, subd. (c).)  California law

1  to do so. Since he was never advised of his rights under PC § 1192.5,

2  he should not be held to have waived them." (See People v. Johnson (1974)

3  10 Cal.3d 686, 872.)

4  <u>PETITIONER IS ENTITLED TO A REMEDY</u>

5  The two available remedies are rescission of the agreement and specific

6  performance. (See United States v. Olesen 920 F.2d 538, 540 (8th Cir. 1990)

7  By serving beyond his entire base term petitioner has met the terms

8  of the agree upon bargain, and paid in a coin that the state cannot refund.

9  Rescission of the contract is impossible under such circumstances;

10  petitioner cannot conceivably be returned to the status quo ante.  That

11  leaves specific performance as the only viable remedy. (See United States

12  ex rel. Ferris v. Finkbeiner, 551 F.2d 15, 17 (7th Cir. 1977) (cert. denied,

13  435 U.S. 932 (1978))

14  While it can be argued that only the BPT has the authority to reduce

15  a sentence, this rule cannot trump the constitutional consideration that

16  the BPT' discretion may apply only to those who are legitimately imprisoned.

17  Petitioner has served the agreed upon term for his crime, and more.

18  The oldest purpose of the Great Writ is as "a swift and imperative remedy

19  in all cases of illegal restraint or confinement." (See Fay v. Noia, 372

20  U.S. 391, 400 (1963); Blackledge v. Allison, 431 U.S. 63, 72 (1977) ("[T]he

21  very purpose of the writ of habeas corpus [is] to safeguard a person's

22  freedom from detention in violation of constitutional guarantees.").  The

23  state has no further lawful authority to hold him in prison on this charge.

24  <u>THE PUNISHMENT IMPOSED BY PC § 190 IS LESS THAN FOR LIFE</u>

25  PC § 190 is an initiative measure which cannot be modified by

26  subsequent legislative enactment not having the requisite majority for

27  altering a voter initiative. (See In re Oluwa (1989) 207 Cal.App.3d at

28  445-446; See Cal. Const., art. II, § 10, subd. (c).)  California law

12

1  proscribes modification of a voter initiative by legislative enactment

2  unless the initiative measure itself permits amendment or repeal without

3  voter approval.  It follows that the punishment prescribed by PC § 190(a)

4  may not be modified without due process of law.

5      In In re Wells (1950) 35 Cal.2d 889, 891, our state Supreme Court

6  stated, "Under the law of this state [former ISL] it is within the

7  discretion of the Authority to either maintain such a sentence as a life

8  sentence by refraining from remitting any portion of it, or to reduce such

9  sentence to a fixed, or tentative fixed, span of years."

10     The fact of law is that the credit provisions of PC § 190(a) are as

11 follows:  PC §§ 2930, 2931 and 2932 outline the manner in which petitioner

12 might reduce his sentence by a maximum of one-third for good-behavior and

13 participation in prison programs.  By virtue of PC § 190(a), the CDC has

14 authority to impose the minimum term set forth by statute for second degree

15 murder which resulted in his anticipated release or discharge date.  The

16 authority is that of the CDC, not of the BPT.  Plainly, in context, the

17 language in PC § 190(a) is unambiguous and refer to the 15-year minimum

18 term of imprisonment for second degree murder sentence, not the actual

19 term imposed by the trial Court.

20     The credit provisions of petitioner's judgment of imprisonment are

21 self-executing.  As existed on November 7, 1978, PC § 2932(a) provided

22 that, "The good behavior and participation credits (PC § 2931) shall deemed

23 to be earned in cases where the department fails to adhere to the time

24 limitation of this section...."  In Toussaint v. McCarthy 801 F.2d 1080,

25 1094-1097 (9th Cir. 1986), the Court concluded that the credits under PC

26 § 2931 created a liberty interest.  The only exception to petitioner's

27 discharge is if it was unauthorized by law, as in the case of the class

28 of prisoners undergoing a life sentence or life term, could the BPT assert

13

1  jurisdiction. (See In re Haygood (1975) 14 Cal.3d 802, 809–812; compare
2  In re Wells, supra 35 Cal.2d 889, 893, "..., that the Authority's action
3  in refraining from fixing a term of years was intended to make or to keep,
4  petitioner a life-termer," [under the holding of People v. McNabb (1935)
5  3 Cal.2d 441, 456].)

6      The indeterminate sentencing provision (PC § 1168(b).), in the DSA,
7  as applied, violates petitioner's due process and equal protection rights.
8  A judgment of imprisonment pursuant to this law is both indefinite and
9  uncertain, and does not meet the requirements of due process and equal
10  protection. (See Bouie v. City of Columbia, 12 L.Ed.2d 894, 905 [378 U.S.
11  347] (1964); McBoyle v. United States 283 U.S. 25, 27, 51 S.Ct. 340, 75
12  L.Ed. 816 (1931); Kolender v. Lawson 461 U.S. 352, 357 (1983); Jones v.
13  Helms 452 U.S. 412, 423, 101 S.Ct. 2434, 2442, 69 L.Ed.2d 118 (1981).)

14      Due process requires that before a criminal sanction or significant
15  administrative penalty attaches, an individual must have fair warning of
16  the conduct prohibited by the statute or the regulation that makes such
17  a sanction possible. (See McBoyle v. United States, supra. (criminal
18  punishment); Gen. Elec. Co. v. EPA 53 F.3d 1324, 1328–29 (D.C. Cir. 1995)
19  (administrative assessed fine).

20      The indeterminate sentencing provision (PC § 1168(b).), in the DSA,
21  used by the CDC to classify petitioner a "Life Prisoner," taken alone,
22  tells nothing about the proper sentencing procedure for persons of
23  petitioner's class of prisoners:  Whom are a sub-group of prisoners who
24  do not share the same characteristics as those prisoners sentenced to
25  express life or imprisonment for life pursuant to PC § 1168(b), under the
26  DSA.

27      Thus, 90 days after petitioner's reception to the CDC, in context
28  with the provisions of Article 2.5 (commencing with Section 2930) of Chapter

14

1   7 of Title 1 or Part 3 of the PC in § 190(a), as enacted by the people

2   in 1978, fixed petitioner's indeterminate life sentence at a term less

3   than for life.

4      By reason of the allowance of credits, under the application of the

5   less than for life principle, petitioner' term as reduced has expired and

6   he is entitled to his discharge.  Sections 190(a), 2930-2932, 3000 of the

7   PC provides that the minimum term of imprisonment shall be imposed and

8   that he shall be released at the expiration of credits reduced by 2931

9   of the PC.

10     Petitioner contends that CDC' use of the ISL, as grounds for

11  classifying him a "Life Prisoner," was improper.  CDC, thereby, created

12  two classes of inmates as of July 1, 1977, which classes are identical

13  in all respects except that petitioner committed his offense after July

14  1, 1977, and is considered sentenced to life with the possibility of parole,

15  a clearly erroneous fact of law which subject him to differential

16  punishment. (See City of New Orleans v. Dukes (1976) 427, U.S. 297, 303,

17  [49 L.Ed.2d 511, 96 S.Ct. 2513, 2516].)

18     The statutory reason whereby petitioner has been classified a "Life

19  Prisoner" by the CDC deprived him of his right to equal protection of the

20  law.  Since his membership in the class created by the indeterminate

21  sentencing statute, in the DSA, and enforced by CDC' and BPT' regulations,

22  has determined that petitioner sentence is considered a life term, this

23  is clearly a classification which touches his interest in personal liberty,

24  a fundamental interest for purposes of equal protection analysis. (See

25  People v. Olivas (1976) 17 Cal.3d 236.)  Therefore, the CDC' and BPT'

26  regulations are not clothed in a presumption of constitutionality; the

27  people must prove that this classification is necessary to some compelling

28  state interest.

15

1 DID THE BPT HAVE LAWFUL AUTHORITY TO MAKE OR ISSUE THE ORDER UNDER ATTACK

2 In In re Stanley (1976) 54 Cal.App.3d 1030, 1033-1034, the Court

3 stated, "The Indeterminate Sentencing Law vests in the Adult Authority

4 two distinct discretionary functions: Sentence-fixing within the statutory

5 minimum and maximum terms for the inmate's crime and parole-setting."

6 The BPT' authority has been substantially reduced and limited to the

7 single subject of parole release functions for those prisoners sentenced

8 to life imprisonment with the possibility of parole pursuant to PC §

9 1168(b). (See former repealed PC §§ 2940 et seq., 3000-3025, 5077; and

10 current §§ 3040 and 5076.1.)

11 Administrative agencies have only the powers conferred on them, either

12 expressly or implied, by State Constitution or by Statute, and

13 administrative actions exceeding those powers are void. (American Federation

14 of Labor v. Unemployment Ins. Appeals Bd. (1996) 13 Cal.4th 1017, 1042)

15 To be valid, administrative regulations and actions must be within the

16 scope of authority conferred by the enabling statute or statutes. (Wood

17 v. Superior Court (1981) 28 Cal.3d 668, 680; Cal. Gov. Code, §§ 11342.1,

18 11342.2.) These principles apply to the rule-making power of an

19 administrative agency, which is limited by the substantive provisions of

20 the law governing that agency. (Environmental Protection Information Center

21 v. Department of Forestry & Fire protection (1996) 43 Cal.App.4th 1011,

22 1022; Masonite Corp. v. Superior Corp. (1994) 25 Cal.App.4th 1045, 1053.)

23 The BPT' authority is found in PC § 3040, this section grants the

24 BPT "the power to allow prisoners imprisoned in the state prison...to go

25 upon parole outside the prison walls and enclosures." The next following

26 sections define the manner in which that power is to be exercised.

27 California PC § 5 (Construction as to existing laws) provides that "the

28 provisions of this code, so far as they are substantially the same as

16

1  existing statutes, must be construed as continuations thereof, and not

2  as new enactment. PC § 3040 must be regard as a continuation of the

3  authority under the ISL, therefore, it is not the term fixing authority

4  of the DSA. The California Supreme Court has declared that PC § 1170.2

5  is the term fixing provision in the DSA. (See In re Lawler (1979) 23 Cal.3d

6  195.)

7      Therefore, the BPT' order denying petitioner's parole release is void.

8  A void judgment, as opposed to an erroneous one, is one which from its

9  inception was legally ineffective. (Williams v. North Carolina (1945) 325

10 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577.) Stated another way, such plain

11 usurpation of power occurs when there is a "total want of jurisdiction"

12 as distinguished from "an error in the exercise of jurisdiction." (Stoll

13 v. Gottleib (1938) 305 U.S. 165, 171, 59 S.Ct. 134, 137, 83 L.Ed. 104.)

14     Even under the BPT' authority our Supreme Court in In re Rosenkrantz

15 (2002) 29 Cal.4th 616, 689 stated, "'The Board's authority to make an

16 exception [to the requirement of setting a parole date] based on the gravity

17 of a life term inmate's current or past offenses should not operate so

18 as to swallow the rule that parole is 'normally' to be granted. Otherwise,

19 the Board's case-by-case rulings would destroy the proportionality

20 contemplated by Penal Code section 3041, subdivision (a), and also by the

21 murder statutes, which provides distinct terms of life without possibility

22 of parole, 25 years to life, and 15 years to life for various degrees and

23 kinds of murder. (Pen. Code, § 190 et seq.) Therefore, a life term offense

24 or any other offenses underlying an indeterminate sentence must be

25 particularly egregious to justify the denial of a parole date.'" (Moreno,

26 J. concur opinion.)

27     In In re Ramirez (2001) 94 Cal.App.4th 549, 569, fn. 8, the Court

28 stated, "the Board should strive to achieve at least a rough balance between

                                    17

1  the gravity of the offenses, the time the inmate has served, and the

2  sentences prescribed by law for the commitment offenses."

3      In Biggs v. Terhune (2003) 334 F.3d 910, 916, the Court of Appeals

4  stated in significant part that, As in the present instance, the parole

5  board's sole supportable reliance on the gravity of the offense and

6  conduct prior to imprisonment to justify denial of parole can be

7  initially justified as fulfilling the requirements set forth by state

8  law.  Over time, however, should Biggs continue to demonstrate exemplary

9  behavior and evidence of rehabilitation, denying him a parole date simply

10 because of the nature of Biggs' offense and prior conduct would raise

11 serious questions involving his liberty interest in parole."

12     For the foregoing reasons may this court grant the relief petitioner

13 requested.

14

15 Dated: _10-30-05_                        _Ignacio Polvos Pena_
                                           IGNACIO POLVOS PENA/PETITIONER

16 //

17 //

18 //

19 //

20 //

21 //

22 //

23 //

24 //

25 //

26 //

27 //

28 //

18

# EXHIBIT   A

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SANTA CLARA

THE PEOPLE OF THE STATE OF CALIFORNIA,

Plaintiff

Against

IGNACIO POLVOS PENA

_____ Defendant _____

(ENDORSED)

DEC 10 1984

DEPUTY

The ___10th__ day of ___December___, A.D., 19 _84_

Cen _____

Cen _____

Cen:_Clerk_____

Cen: _____

Cen: _____8442330_____

**INFORMATION NO.** ___ _96973_

COUNT ONE

The District Attorney of the County of Santa Clara, State of California, hereby accuses _____

_____ IGNACIO POLVOS PENA _____

of a felony, to-wit: a viol. of Calif. ___Penal Code Section 187 (MURDER)_____

_____ in that, on or about the ____20th_

day of ___October_____, A.D., 19 _84___, in the County of Santa Clara, State of California, the said defendant(s) did unlawfully and with malice aforethought, kill FELIBERTO VALENCIA, a human being.

It is further alleged that at the time of and in the commission and attempted commission of the foregoing offense, the said defendant, IGNACIO POLVOS PENA, personally used a firearm, to wit: a HANDGUN, within the meaning of section 12022.5 and 1203.06 of the Penal Code.

Leo Himmelsbach
District Attorney

73495 adc FA/PA B8437137

SNAP RE . 1/83

By ___John F. Marshall_____
JOHN F. MARSHALL/ROD L. BRAUGHTON
Deputy _____ District Attorney

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA

## ABSTRACT OF JUDGEMENT
### FOR COMMITMENT TO STATE PRISON

THE PEOPLE OF THE STATE OF CALIFORNIA
PLAINTIFF

VS

IGNACIO POLVOS PENA ,
DEFENDANT

DATE November 12, 1985

CASE NUMBER: 96973

PRESENT
ROBERT M. FOLEY
JUDGE OF THE SUPERIOR COURT

Leo Himmelsbach , District Attorney

By     Rod Braughton                          , DEPUTY

Daniel V. Hernandez
COUNSEL FOR DEFENDANT

Doneyn Oyama
CLERK

Retha Fuller
REPORTER

☐ PROBATION HAVING BEEN HERETOFORE GRANTED AND SAID PROBATION HAVING BEEN REVOKED ON
☒ APPLICATION FOR PROBATION IS DENIED.     THE DEFENDANT IS DULY ARRAIGNED.

Count No. One
of_____Guilty_____. WHEREAS THE SAID DEFENDANT ON HIS PLEA_____having
(GUILTY, NOT GUILTY, FORMER CONVICTION OR ACQUITTAL, ONCE IN JEOPARDY, NOT GUILTY BY REASON OF INSANITY)

been convicted by _Court_ of _Second Degree Murder_
(THE COURT OR JURY)     (DESIGNATION OF CRIME AND DEGREE IF ANY, INCLUDING FACT THAT IT CONSTITUTES A SECOND OR SUBSEQUENT, IF THAT
AFFECTS THE SENTENCE)

IN VIOLATION OF_____California Penal Code Section 187**_____
(REFERENCE TO CODE OR STATUTE, INCLUDING SECTION AND SUBSECTION THEREOF, IF ANY VIOLATED.)

THE COURT FINDS:     (*IF NO FINDING MADE ENTER, "NO FINDING MADE.")   No FINDING MADE.
***(see below)
THE DEFENDANT HAS BEEN HELD IN CUSTODY FOR · / · DAYS AS A RESULT OF THE SAME CRIMINAL ACT OR ACTS FOR WHICH HE HAS BEEN CON-
VICTED.

. THE DEFENDANT_____ARMED WITH A DEADLY WEAPON AT THE TIME OF HIS COMMISSION
(WAS OR WAS NOT)
OF THE OFFENSE OR A CONCEALED DEADLY WEAPON AT THE TIME OF HIS ARREST WITHIN THE MEANING OF Sections 969c and 3024 of the Penal
Code.

. THE DEFENDANT_____ARMED WITH A DEADLY WEAPON AT THE TIME OF HIS COMMISSION
(WAS OR WAS NOT)
OF THE OFFENSE WITHIN THE MEANING OF Sections 969c and 12022 of the Penal Code.

. THE DEFENDANT____used____A FIREARM IN HIS COMMISSION OF THE OFFENSE WITHIN THE MEANING
(USED OR DID NOT USE)
OF Sections 969d and 12022.5 of the Penal Code.

. THE DEFENDANT____was____ARMED AT THE TIME OF HIS COMMISSION OF THE OFFENSE WITHIN THE
(WAS OR WAS NOT)
MEANING OF Section 1203 of the Penal Code and that weapon was  a handgun.

. THE DEFENDANT HAS HAD PRIOR FELONY CONVICTIONS AS FOLLOWS:

| DATE | COUNTY AND STATE | CRIME | DISPOSITION |
|---|---|---|---|
|  |  |  |  |

*** Defendant held in custody 389 actual days plus 194 local conduct credits
for a total of 583 days.

694 RC. ~/75

ORIGINAL

# EXHIBIT B

073495

073495

F I L E D

NOV 0 7 1996

STEPHEN V. LOVE
County Clerk
Santa Clara County
BY _____ DEPUTY

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SANTA CLARA

In re                          )
                               )    No. 96973
                               )
IGNACIO POLVOS PENA            )    O R D E R
                               )
                               )    8449330
On Habeas Corpus               )
_____)

    IGNACIO POLVOS PENA (hereinafter Petitioner) petitions for a writ
of habeas corpus.

    A.    Statement of Facts and Procedure.

    On October 20, 1984, in the early morning hours, police responded
to a report of a shooting outside Armando's Bar, in Palo Alto.  The
victim died later that same day.  The suspect fled the scene, but not
before someone shot at the suspect's car.  A broadcast was made of the
suspect's description and car.  A short time later Menlo Park police
stopped petitioner as he was putting gas in a car matching the
description of the suspect car.  There was a bullet hole in
petitioner's gas tank and petitioner had a .38 caliber automatic
pistol in his waistband with a live round in the chamber and an empty
clip.  Petitioner was identified by two witnesses in a drive by line
up.

1    Petitioner was taken into custody and was advised of his Miranda

2    rights, which he waived and agreed to talk to the police.  Petitioner

3    first denied being involved, then admitted to being the shooter.

4    Petitioner was arrested on October 20, 1984.  A preliminary

5    hearing was held on November 29, 1984 where petitioner was held to

6    answer the charges.  Petitioner pled not guilty to the charges.

7    Petitioner retained attorney Daniel Villaneuva Hernandez to

8    represent him.  After almost a year of delays, primarily caused by Mr.

9    Hernandez, petitioner changed his plea on advice of counsel.  Pursuant

10   to a plea bargain, petitioner pled guilty to Second Degree Murder with

11   the use of a firearm on October 17, 1985.  On November 12, 1985

12   petitioner was sentenced to 17 years to life imprisonment.

13   During the years of 1986 and 1987, petitioner contends he had

14   continuous conversations with Mr. Hernandez concerning his

15   opportunities for post-conviction relief.  Mr. Hernandez advised the

16   petitioner that he should challenge his confession by way of writ of

17   habeas corpus.  Mr. Hernandez, however, declined to represent

18   petitioner as petitioner had no resources available to pay for this

19   representation.  Petitioner filed a writ of habeas corpus challenging

20   his confession, which was denied without opinion on April 13, 1988 by

21   the Sixth District Court of Appeal.

22   Petitioner contends that for the next eight years he attempted to

23   obtain his case file from Mr. Hernandez with little success.  On July

24   3, 1996, petitioner finally received from Mr. Hernandez copies of case

25   file documents, limited solely to copies of Reporter's Transcripts of

26   various proceedings in the trial court.

27   Petitioner files the instant writ of habeas corpus contending

28   that his Sixth Amendment right to effective assistance of counsel was

2

1  violated by trial counsel.  Petitioner seeks to withdraw his plea and

2  proceed to trial on the charges.

3      B.  Ineffective assistance of counsel.

4      In order to demonstrate ineffective assistance of counsel, a

5  defendant must show (1) that his or her counsel's performance was

6  deficient because the lawyer's representation fell below an objective

7  standard of reasonableness under prevailing professional norms and

8  (2) counsel's deficient performance subjected the defendant to

9  prejudice, i.e., there is a reasonable probability that, but for

10  counsel's failings, the result would have been more favorable to the

11  defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688,

12  cited in *In Re Harris* (1993) 5 Cal.4th at 832-833; *In Re Alvernas*

13  (1992) 2 Cal.4th 924, 936-937 and *People v. Haskett* (1990) 52 Cal.3d

14  210, 248.)

15      C.  Application to the case at bar.

16      Petitioner has not made a prima facie case of constitutionally

17  ineffective assistance of his counsel because Petitioner has failed to

18  show that counsel's deficient performance subjected him to prejudice.

19  Petitioner has in no way demonstrated that but for counsel's failings,

20  the result would have been more favorable to the defendant.  Where

21  prejudice is not shown, the court need not determine whether counsel's

22  performance was deficient. (*Strickland, supra*, 466 U.S. at 691, 692.)

23      When, as in the instant case, a defendant entered a guilty plea,

24  petitioner must show a reasonable probability that he would have gone

25  to trial and not have pleaded guilty.  (*Hill v. Lockhart* (1985) 474

26  U.S. 52, 58-60.)  Whether counsel's deficient performance caused

27  petitioner to plead guilty depends on the likelihood that, but for

28  counsel's deficient performance, counsel would have made a different

1  recommendation as to the plea. (*Id.*)

2  　　　In regard to prejudice, petitioner only states that there was a

3  viable defense based on the inadmissibility of his confession due to a

4  violation of his *Miranda* rights. Petitioner does not further discuss

5  this contention.

6  　　　Accordingly, petitioner has failed to make a prima facie case of

7  ineffective assistance of counsel. Petitioner has the burden of

8  pleading sufficient grounds for relief. (*People v. Duvall* (1995) 9

9  Cal.4th 464, 474.) Specifically, petitioner must plead facts which,

10  if true, would entitle him to relief. (*Id.* at 474-75.)

11  　　D.　Conclusion.

12  　　　For all of the foregoing reasons, the petition is DENIED.

13

14

15

16  DATED: Nov. 6,　　　　, 1996

17  　　　　　　　　　　JOHN T. BALL
　　　　　　　　　　JUDGE OF THE SUPERIOR COURT

18

19

20  cc:  Petitioner
　　　Santa Clara County District Attorney
21　　Research
　　　File

22

23

24

25

26

27

28

4

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
# FOR THE COUNTY OF SANTA CLARA

The People of the State of California

vs

IGNACIO POLVOS PENA

PROOF OF SERVICE BY MAIL OF:

[ ] TRIAL SETTING CONFERENCE ORDER

[ ] PRE TRIAL CONFERENCE ORDER

[ ] ADDENDUM TO PRE TRIAL/TRIAL SETTING

[ ] ORDER EXTENDING TIME            CASE# _96973_

[X] ORDER RE PETITION FOR HABEAS CORPUS

[ ] OTHER: REQUEST FOR TRANSCRIPTS

CLERK'S CERTIFICATE OF MAILING:
I CERTIFY THAT I AM NOT A PARTY TO THIS CAUSE AND THAT A TRUE COPY
OF THIS DOCUMENT WAS MAILED FIRST CLASS POSTAGE PREPAID IN A SEALED
ENVELOPE ADDRESSED AS SHOWN BELOW AND THE DOCUMENT WAS MAILED AT
SAN JOSE, CALIFORNIA ON _NOVEMBER 7, 1996_

Dated: _NOVEMBER 7, 1996_

**FILED**

NOV 07 1996

STEPHEN V. LOVE
County Clerk
Santa Clara County
BY _____ DEPUTY

STEPHEN V. LOVE
County Clerk

By: _____
        Deputy Clerk

[IGNACIO POLVOS PENA D-17862]       [OFFICE OF THE DISTRICT ATTORNEY]
CALIFORNIA STATE PRISON VMF          COUNTY OF SANTA CLARA
P.O. BOX 4000                        70 W. HEDDING ST.
VACAVILLE, CA. 95696                 [SAN JOSE, CA.   95110           ]

[                         ]          [X] Placed in District Attorney's
                                         Pick-up Box, Hall of Justice

[RESEARCH ATTORNEY        ]  [                                          ]
 SUPERIOR COURT-CRIMINAL DIV.
 COUNTY OF SANTA CLARA
 190 W. HEDDING ST.
[SAN JOSE, CA 95110       ]  [                                          ]

[X]Placed in Research Attorney's
Box, Hall of Justice

RECEIVED
S.C.CO. D.A. OFFICE

NOV 07 1996

REFER TO

# EXHIBIT   C

1    IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2    IN AND FOR THE COUNTY OF SANTA CLARA

3    BEFORE THE HONORABLE ROBERT M. FOLEY, JUDGE

4    DEPARTMENT 5

(ENDORSED)
FILED
DEC 19 1985
DEPUTY            Clerk

5    ---oOo---

6

7    THE PEOPLE OF THE STATE OF CALIFORNIA,    )

8                    Plaintiff,    )    No. 96973

9            -vs-    )

10   IGNACIO P. PENA,    )

11                   Defendant.    )

12   ──────────────────────────────

13   ---oOo---

14

15

16

17

18   REPORTER'S TRANSCRIPT OF PROCEEDINGS

19   Held on October 17, 1985

20

21   APPEARANCES:

22   For the People:              OFFICE OF THE DISTRICT ATTORNEY
                                  BY: ROD BRAUGHTON, D.D.A.
23

24   For the Defendant:           DANIEL HERNANDEZ,
                                  ATTORNEY AT LAW

25   Spanish Interpreter:         Evelyn Aaron

26   Official Court Reporter:     Barbara T. Ives, CSR No.448

27

28   ---oOo---