# EXHIBIT 5
# part 3 of 3

1          ATTORNEY SANDERS:  Okay, for the record

2   then, Commissioner, the objections then are, have

3   been noted and denied, correct?

4          PRESIDING COMMISSIONER MOORE:  That's

5   correct.

6          ATTORNEY SANDERS:  All right.

7          PRESIDING COMMISSIONER MOORE:  Now,

8   Mr. Braughton, do you have these documents?

9          DEPUTY DISTRICT ATTORNEY BRAUGHTON:  I

10  believe I do, thank you.

11         PRESIDING COMMISSIONER MOORE:  Now,

12  Mr. Pena, will you be speaking with us today?

13         INMATE PENA THROUGH INTERPRETER:  About

14  what?

15         PRESIDING COMMISSIONER MOORE:  About the

16  committing offense, about his time in prison,

17  things that he's done since he's been here.  You

18  don't have to talk to us if you do not want to.

19  I'm just trying to find out if you are.  If you

20  are, we're going to swear you in for the

21  information that you're going to give us today.

22         INMATE PENA THROUGH INTERPRETER:  I want to

23  speak about the record within the prison, but not

24  about my offense.

25         PRESIDING COMMISSIONER MOORE:  Okay, that's

26  fine.  If you'll raise your right hand, I'll swear

27  you in for the information that you want to give

14

1    us.  Do you solemnly swear or affirm the testimony

2    you give at this hearing will be the truth, the

3    whole truth, and nothing but the truth, sir?

4         **INMATE PENA THROUGH INTERPRETER:**  Yes, Sir

5         **PRESIDING COMMISSIONER MOORE:**  All right,

6    thank you, sir.  You can put your hand down.  All

7    right, counsel I'm going to incorporate by

8    reference the Statement of Facts from the

9    transcript held on July 25th of 2000, pages 17 and

10   18, if there are no objections to that.

11        **ATTORNEY SANDERS:**  We have no objections.

12   For the record, my client has stated that at this

13   time he does not want to talk about the life

14   crime.

15        **PRESIDING COMMISSIONER MOORE:**  Not a

16   problem.  And it's noted that (inaudible)

17   prisoner's version, he has declined to participate

18   in an interview session regarding his coming Board

19   dates saying that this was his way of protesting

20   the BPT's denial of a parole date.  It is also

21   noted that he declined to sign any of the

22   paperwork regarding the hearing.  And, let's see,

23   it's noted in his February 2000 Board report, that

24   the prisoner declined to speak of the crime due to

25   an appeal pending in federal court.  All right,

26   now, pre-conviction factors, he had no juvenile

27   record, Mr. Pena, is that accurate?

37

1           CALIFORNIA BOARD OF PRISON TERMS

2                    D E C I S I O N

3           **DEPUTY COMMISSIONER LEHMAN:**  We're back on

4      the record.

5           **PRESIDING COMMISSIONER MOORE:**  Thank you.

6      Let the record show that all interested parties

7      have returned to the room.  Ignacio Pena, CDC

8      number D-as in David-17862.  The Panel's reviewed

9      all information received from the public and

10     relied on the following circumstances in

11     concluding that the prisoner is not suitable for

12     parole and would pose an unreasonable risk of

13     danger to society or a threat to public safety if

14     released from prison at this time.  One would be

15     the committing offense.  The offense was carried

16     out in an especially cruel and callous manner.

17     The offense was carried out in a dispassionate and

18     calculated manner.  The offense was carried out in

19     a manner which demonstrates an exceptionally

20     callous disregard for human suffering.  And these

21     conclusions are drawn from the Statement of Facts

22     wherein the prisoner recognized the victim as

23     being the man who shot his uncle two years prior

24     to the committing offense.  The prisoner left the

25     scene, went to obtain his gun, and came back to

26     the scene, waited for the victim to leave the bar

27     IGNACIO PENA   D-17862   DECISION PAGE 1    11/18/02

38

1    at which time he fired shots.  He shot the victim

2    approximately seven times from a distance of three

3    feet, and so the victim died at the scene.

4    Previous record, the prisoner has an escalating

5    pattern of criminal conduct and violence.  He has

6    a history of unstable and tumultuous relationships

7    with others in that he began drinking alcohol at

8    about the age of nine or so.  He failed to profit

9    from society's previous attempts to correct his

10   criminality.  Such attempts include county jail

11   time, and fines.  He has an unstable social

12   history of prior criminality, which includes other

13   arrests for reckless driving, giving false

14   information to a peace officer.  Institutional

15   behavior, the prisoner's programmed in a limited

16   manner while incarcerated.  He's failed to upgrade

17   vocationally, as previously recommended by the

18   Board.  He's not sufficiently participated in

19   beneficial self-help and therapy programming at

20   this time.  He's failed to demonstrate evidence of

21   positive change.  Misconduct while incarcerated

22   includes a 115, dated May 5th of 2001, for

23   refusing to work.  Parole plans, the prisoner

24   lacks realistic parole plans in that he does not

25   have a viable residential plan in his home

26   country, being that he is, he has a US INS hold.

27   IGNACIO PENA   D-17862  DECISION PAGE 2   11/18/02

39

1    3042 Notices, the hearing Panel notes responses to

2    3042 Notices indicate opposition to a finding of

3    parole suitability.  Specifically, the District

4    Attorney's office of Santa Clara County, had a

5    representative present here today in opposition to

6    a finding of parole suitability at this time, as

7    well as the Palo Alto Police Department, which was

8    the law enforcement agency which investigated the

9    case.  A letter sent of July the 2nd of 2002, by

10   Sergeant Michael Honiker, H-O-N-I-K-E-R, who

11   writes in opposition to a finding of suitability

12   at this time.  As well as the prisoner's

13   counselor, CC-I K. Buckley, B-U-C-K-L-E-Y.   CC-I

14   wrote on the April 8th, 2002 Board report that the

15   prisoner would pose a moderate degree of threat if

16   released to the public at this time.  Remarks to

17   the prisoner, the Panel makes the following

18   findings:  that the prisoner needs therapy in

19   order to face, discuss, understand, and cope with

20   stress in a non-destructive manner so that the

21   prisoner can better understand the causative

22   factors, as well as his culpability in this crime.

23   Until progress is made, the prisoner continues to

24   be unpredictable and a threat to others.  His

25   gains are recent and he must be able to

26   demonstrate the ability to maintain these gains

27   **IGNACIO PENA   D-17862   DECISION PAGE 3   11/18/02**

40

1    over an extended period of time.  In terms of that

2    I'm talking about the last 115 was in May 2001.

3    Nevertheless, the prisoner should be commended.

4    He's participated in AA for some time, you got to

5    be treasurer of the Prison Outreach Program in

6    2000.  He has received a welding certificate.  He

7    participated in the Sexual Transmitted Diseases

8    and received certificates for TB, HIV, AIDS,

9    Hepatitis A, B and C, as well as in the past he's

10   received his GED.  However, these positive aspects

11   of his behavior don't outweigh factors of

12   unsuitability.  This is a two year denial, sir.

13   In a separate decision, the hearing Panel finds

14   that the prisoner has been convicted of murder and

15   it is not reasonable to expect that parole would

16   be granted at a hearing during the next two years.

17   The specific reasons for our findings are as

18   follows:  that the prisoner committed the offense

19   in an especially cruel and callous manner, wherein

20   the prisoner identified the victim, whose name was

21   Filiberto (phonetic) Valencia, he was 28 years of

22   age.  In this particular case in believing that

23   the victim to be the man who shot and killed his

24   uncle two years prior.  He left the scene, which

25   was in Palo Alto, a bar, and obtained a gun and

26   returned to the bar and waited for the victim to

27   IGNACIO PENA    D-17862   DECISION PAGE 4    11/18/02

41

1   exit, at which time he shot the victim some seven

2   times from a distance of three feet or so.   The

3   victim was shot some four times receiving gunshot

4   wounds to the abdomen and he died at the scene.

5   The offense was carried out in a dispassionate and

6   calculated manner, as we've already talked about,

7   he left the scene and returned with a gun.   The

8   offense was carried out in a manner which

9   demonstrates an exceptionally callous disregard

10   for human suffering in that he shot him some seven

11   times, hitting his victim some four times.   The

12   prisoner has a history of minor criminality as

13   mentioned earlier, coming to the United States

14   illegally as well as reckless driving and

15   providing false information to a peace officer.

16   The prisoner has a history of unstable, tumultuous

17   relationships with others in terms of starting to

18   drink, to use alcohol around the age of nine.   He

19   recently received a serious 115 violation dated

20   May 5th, 2001, for refusing to work.   The prisoner

21   has not completed necessary programming which is

22   essential to his adjustment and needs additional

23   time to gain such programming.   He's failed to

24   complete or participate and upgrade in a

25   vocational trade as previously recommended to him

26   by the Board.   Therefore, a longer period of

27   IGNACIO PENA   D-17862   DECISION PAGE 5   11/18/02

42

1    observation and evaluation of the prisoner is

2    required before the Board should find this

3    prisoner is suitable for parole.   Recommendations

4    to you, Mr. Pena, are to become and to remain

5    disciplinary-free, if it's available to you to

6    upgrade vocationally.   If it's available to you to

7    participate in beneficial self-help and therapy

8    programming at this time.   Mr. Pena, it's for you

9    to understand it, you do not have a determinate

10   sentence, you have an indeterminate sentence.

11   Part of the process is you have to comply with the

12   rules.   You have to comply with the rules whatever

13   they may be.   If you are instructed to do so, then

14   you must do that, you must comply.   You cannot

15   explain away a 115.   You were told to report to a

16   specific area, a specific job, a specific

17   assignment.   It's your responsibility to be there.

18   It seems to me that you came in here today, you

19   have somewhat of a chip on your shoulder.   I

20   understand that you disagree with the political

21   views of the powers to be at this time.   If you

22   were to prepare yourself to go home, you have to

23   forget about those political views.   You have to

24   do what it takes to get yourself ready and

25   prepared to go, to receive a date.   There are men

26   and women on the Board that give dates, whether or

27   IGNACIO PENA   D-17862   DECISION PAGE 6   11/18/02

43

1    not you receive one will be up to you.  The

2    process is like, somewhat like a pendulum, and

3    what happens is that the pendulum process, some

4    days it swings your way and allows you to flow

5    through.  Other days it swings the opposite way

6    and won't allow you to go through.  Those people

7    who are better prepared and ready, when it opens,

8.   they go through.  But as long as you have a chip

9    on your shoulder and refuse to make sure that you

10   are the most prepared, the most ready, it will not

11   happen for you.  Just something to think about.

12   Commissioner, any comments to the prisoner?

13         **DEPUTY COMMISSIONER LEHMAN:**  I have nothing

14   further.

15         **PRESIDING COMMISSIONER MOORE:**  This

16·  concludes our hearing today, Mr. Pena.  Good luck

17   to you, sir.  The time is 1545 hours.

18                    --o0o--

19

20

21

22

23.

24

25   PAROLE DENIED TWO YEARS

26   EFFECTIVE DATE OF THIS DECISION        DEC 0 6 2002

27   IGNACIO PENA    D-17862   DECISION PAGE 7   11/18/02

44

## CERTIFICATE AND

## DECLARATION OF TRANSCRIBER

I, VALERIE C. LORD, a duly designated transcriber, CAPITOL ELECTRONIC REPORTING, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total one in number and cover a total of pages numbered 1 through 43, and which recording was duly recorded at CALIFORNIA STATE PRISON, SOLANO at VACAVILLE, CALIFORNIA, in the matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING of IGNACIO PENA, CDC No. D-17862, on NOVEMBER 18, 2002, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape(s) to the best of my ability.

I hereby certify that I am a disinterested party in the above-captioned matter and have no interest in the outcome of the hearing.

Dated November 28, 2002, at Auburn, California.

Valerie C. Lord
Transcriber
**CAPITOL ELECTRONIC REPORTING**

BOARD OF PRISON TERMS

# ORIGINAL APPEAL

STATE OF CALIFORNIA

(TITLE 15, CCR §§ 2050-2056)

| | |
|---|---|
| NAME: Pena, Ignacio<br>CDC NUMBER: D-17862<br>INSTITUTION: CSP-Solano<br>DATE SUBMITTED: January 2, 2003 | CDC STAFF USE ONLY<br>LOG NUMBER: ∠00(-0ラ<br>DATE RECEIVED: 0(-0ラ-02 |

## DECISION BEING APPEALED

☐ PAROLE REVOCATION
☐ REVOCATION EXTENSION
☐ RETAIN ON PAROLE
☐ SCREENING DECISION
☒ LIFE PRISONER
☐ MENTALLY DISORDERED OFFENDER
☒ OTHER (SPECIFY): THE "LIFE PRISONER"

DESIGNATION AND CLASSIFICATION IMPLICATES A

LIBERTY INTEREST PROTECTED BY DUE PROCESS CLAUSE.

RECEIVED
JAN 1 3 2003
BOARD OF PRISON TERMS

## BASIS FOR APPEAL

DATE OF DECISION/HEARING BEING APPEALED (SPECIFY):
11-18-2002

☒ THE DECISION WAS BASED ON INCOMPLETE OR INCORRECT INFORMATION.
☐ THE DECISION IS UNREASONABLE IN VIEW OF THE FACTS.
☒ THE DECISION IS ILLEGAL.
☒ THE DECISION VIOLATES THE FOLLOWING BOARD REGULATIONS OR RULES. (SPECIFY):

WHAT ACTION ARE YOU REQUESTING THE BOARD TO TAKE? RENDER DECISION/ORDER VOID FOR LACK OF SUBJECT-MATTER JURISDICTION. THE BPT WRONGFULLY EXTENDED ITS JURISDICTION BEYOND THE SCOPE OF ITS AUTHORITY. SUCH IS A PLAIN USURPATION OF POWER AND DENIAL OF PROCEDURAL DUE PROCESS.

PLEASE STATE (TYPE OR PRINT) AND SEPARATELY NUMBER EACH BASIS FOR YOUR APPEAL.

OBJECTIONS AND STATEMENT THROUGH COUNSEL AT THE PAROLE CONSIDERATION FOR "LIFE

PRISONERS" IMPLEMENTING PENAL CODE SECTIONS 3041 AND 3042.

The panel lacks jurisdiction to deny the prisoner his release on parole, because the law of Penal Code Section (PC§) 190 governs his sentence and authorizes behavior and participation credits; and was added by initiative measure approved by the voters on November 7, 1978, therefore, the hearing is invalid. The Fourteenth Amendment to the United States Constitution and Article I, section 7 of the California Constitution, each guarantee that no person shall be deprived of life, liberty, or property without due process of the law; nor the equal protection of the laws. This constitutional command requires an administrative agency who has been granted the authority to adopt rules and regulations to be (1) consistent and not in conflict with the provisions of the enabling legislation and (2) reasonably

| SIGNATURE (All appeals must be signed.)<br>*[signature]* | CDC NUMBER<br>D-17862 | INSTITUTION/REGION<br>CSP-Solano |
|---|---|---|

BPT 1040 (rev. 9/88)

Attach more pages if necessary.
See other side for instructions.

PERMANENT ADDENDA

Pena, Ignacio      CDC#: D-17862      CSP-Solano      Date of Decision/Hearing: 11/18/2002

necessary to effectuate its purpose.  The administrative agency may not vary or enlarge the terms of such legislation, i.e., its rules and regulations must come within the scope of the authority conferred in order for the rule or regulation to be valid.  Simply stated, the Board of Prison terms (BPT) is without authority to redetermine the minimum term of imprisonment that was imposed upon the prisoner by statute nor deny his release date that was calculated under the PC §2932, subd. (b) by the Department of Corrections.  For the following numerical reasons the prisoner raises these **FORMAL OBJECTIONS:**

1.  **Under the doctrine of Stare Decisis, all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction,** in so far as that term is used to indicate that those acts may be enforced by mandate.  The BPT' interpretation of PC§190 does not comport with the decision of the California Supreme Court.  For example, in the case of In re Jeanice D. (1980) 28 Cal.3d 210, at p. 217, the court stated:

"In referring to a 'minimum term of 25...years...imposed pursuant to this section,' the current statute unambiguously demonstrates that the provision contemplates that an individual sentenced under the statute will not automatically receive a determinate term of life imprisonment.  Instead, the statute recognizes that, as with traditional indeterminate sentences, the term actually imposed upon an individual offender may range from 25 years to life.  The Attorney General's proposed interpretation of the statute as requiring an automatic imposition of a sentence of life imprisonment in every case completely conflicts with this language and for that reason alone must be rejected."

2.  Under the group of laws the BPT has placed this prisoner does only come within the scope of the limited authority conferred by the Uniform Determinate Sentencing Act of 1976 (DSA), which only enables the consideration of setting of release dates to go upon parole outside the prison walls and enclosures.  There is **no authority for the fixing terms of imprisonment within the minimum and maximum.**  There is no provision in the DSA, such as PC§3020 of the old law, to authorize the BPT to determine or redetermine the term governed by PC§190.  Therefore, any acts which exceed the defined power of a tribunal in any instance, whether that power be defined by constitutional provision or expressed statutory declaration, are in excess of jurisdiction and/or abuse of discretion, in so far as that term is used to indicate that those acts may be restrained by prohibition.  For example, it is improper for the BPT to use the designation "Life Term" to describe the prisoner's sentence if it has not been imposed upon him by a competent tribunal authorized by law.  The notices sent out pursuant to PC§3042, as a service process, and the BPT' and California Department of Corrections' (CDC) files and records use this designation to describe the prisoner's term of imprisonment.  A statute enacted by the electorate as an initiative measure may be changed only with the approval of the electorate unless the initiative measure permits amendment or repeal without their approval. (Art. II, §10, subd. (c) of the California Constitution.)  A review of the initiative measure which enacted PC§190 (Proposition 7 in the Nov. 1978 general election.)  disclosed no provision which permits amendment or repeal without voter approval.  Therefore, this designation would amend PC§190 without compliance of the constitutional procedures required.  The BPT has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed.  The BPT is no more at liberty to add provisions to what is therein declared in definite language than it is to disregard any of its express provisions.

3.  The prisoner's judgment of imprisonment has been satisfied when he had completed the term of imprisonment imposed upon him by statute, absence procedural due process

ADDITIONAL PAGE 1.

Pena, Ignacio      CDC#: D-17862   CSP-Solano    Date of Decision/Hearing: 11/18/2002

proceedings to redetermine his term of imprisonment.  The application by the BPT of the
DSA parole guidelines set forth in PC§3041, for determining whether to set a release date
for "life prisoners", provides no reason found in logic or justice to have not distinguished
the this straight life term from the penalty provision pursuant to PC§190.  This indefinite
penalty is analogous to the prison terms for prisoners whose offense occurred under the
Indeterminate Sentence Law (ISL), but was sentenced after the enactment of the DSA. In which
the BPT was required to reset the prison terms pursuant to the provisions of PC§1170.2,
subd. (a), from indefinite to definite.  The BPT was also required to set a parole release
date on the term of imprisonment imposed and calculated under PC§1170.2, subd. (a), unless
two members of the BPT determine that the prisoner should serve a term longer than that
calculated.  In that event, the BPT must give notice and a prompt hearing to the ISL
prisoner.  This prisoner is entitled to the same procedural due process protection, yet,
which has never been afforded him, as a result, the BPT has no jurisdiction to determine
or redetermine his term of imprisonment or to circumvent the release date calculated by
the CDC under the authority of PC§§2930 et seq. Therefore the prisoner must be released
forthwith, because he has already served the lawful term of imprisonment actually imposed
upon him by statute.

   Finally, the BPT' quasi-judicial duties do not extend to the prisoner, and the conduct
relating to him is merely ministerial functions.  Furthermore, ministerial conduct enjoys
only qualified immunity that is triggered by showing that the BPT acted in good faith,
pursuant to lawful authority vested in them by the State. **Chapman v. California**, (1967)
386 U.S. 18 [17 L.Ed.2d].

_il amacio fino_
_____        Dated: January 2, 2003
(PRISONER'S SIGNATURE)

ADDITIONAL PAGE 2.

BOARD OF PRISON TERMS
OFFICE OF POLICY AND APPEALS                    STATE OF CALIFORNIA
DECISION ON APPEAL          FORWARD TO INMATE/PAROLEE

---

Your appeal was received by the Board on January 13, 2003.

---

**Decision you appealed:**

Life parole consideration hearing of November 18, 2002.  Parole denied.  Next hearing in 2 years.

---

**Reasons for your appeal:**

1. The prisoner contends that the Board's interpretation of PC § 190 does not comport with the California Supreme Court decision in *In re Jeanice* (1980).
2. The prisoner contends that based upon the authority of the Determinate Sentencing Law (DSL) the Board has, "No authority for the fixing of terms of imprisonment within the minimum and maximum."
3. The prisoner contends that the Board is required to set a parole date pursuant to PC § 1170.2 (a) and PC § 2930 et seq.

---

**Decision by the Board on this appeal:**

[ X ] Denied                    [ ] Granted                    [ ] Dismissed or no action
    (No – the decision            (Yes – the decision            (The appeal will not
    stays the same)               will be changed)                be looked at)

---

Name _Carols Daly_          BOARD PANEL
                            Title                          Date _7-8-03_
                            Commissioner

Name _____          BOARD PANEL
                            Title                          Date _7-8-03_
                            Commissioner

---

CDC Staff to assist in reviewing appeal decision          Yes [ ]      No [ X ]

---

| NAME | CDC # | PRISON/REGION | DATE |
|------|-------|---------------|------|
| PENA, Ignacio | D-17862 | CSP-SOLANO | JUL 0 8 2003 |

PFF

BPT 1041 (REV. 01/02)

INMATE COPY

### REASONS FOR DECISION

#### Introduction

Title 15 of the California Code of Regulations (15 CCR), § 2400 et seq., sets forth parole suitability criteria and procedures for life prisoners who committed murder on or after November 8, 1978. Prisoner rights are specified at 15 CCR §§ 2245 - 2256. Appeals from parole consideration hearings are governed by 15 CCR §§ 2050-2057.

#### Decision on Appeal

1. The prisoner contends that the Board's interpretation of PC § 190 does not comport with the California Supreme Court decision in *In re Jeanice* (1980).

**Appeal Denied:** The prisoner is both confused and mistaken. PC § 190 et seq. are the statutes that set out the various punishments for persons who commit murder. The Board does not have any reason to "interpret" that statute.

Further, a life parole consideration hearing is an administrative procedure, not a procedure found in a court of law. The purpose is to determine the prisoner's suitability for parole. In doing so, the panel may review all relevant and reliable information about the prisoner as well as all case factors pertaining to his case. In determining factors of suitability the panel makes an assessment as to the nature and magnitude of the life offense and the prisoner's culpability. The panel's decision is based upon the conclusion that it reaches after weighing all the evidence that has been presented at the hearing. In rendering its decision, the panel must give its reasons for its finding of suitability or unsuitability; that is all that is required, nothing more. (Title 15 CCR § 2402(c) (d)).

The rules of the Board of Prison Terms have been approved by the Office of Administrative Law. The prisoner's hearing has been conducted pursuant to PC §§ 3041, 3042 and the Board's rules. Until the Board is specifically directed by the court to change or amend its procedures for conducting its hearings, these current laws and rules are applicable to the prisoner's case.

2. The prisoner contends that based upon the authority of the Determinate Sentencing Law (DSL) the Board has, "No authority for the fixing of terms of imprisonment within the minimum and maximum."

**Appeal Denied:** The prisoner is mistaken. His case does not fall within the provisions of the Determinate Sentence Law (PC § 1170). He has been sentenced to prison pursuant to PC § 1168(b) for an <u>indeterminate term</u> of 17 years to Life. PC § 1168(b) provides the Board with the authority to set the term of the duration of the period of imprisonment. (Emphasis added)

Also, in the case of *In re Rodriguez* (1975) 14 Cal.3d 639, 651-652, the court said that it followed *People* v. *Wingo* (1975) 14 Cal.3d 169, in that a prisoner who had a maximum term which may be disproportionate to his individual culpability has a right to have his term fixed at a number of years that is proportionate to his offense. <u>The maximum term for the prisoner's offense (i.e., life) is not disproportionate to his culpability. Therefore, he is not entitled to have his term fixed prior to a finding of suitability for parole.</u> Board rules regarding its pre-suitability procedures were upheld in *In re Seabock* (1983) 140 Cal.App.3d 29. (Emphasis added)

PENA, Ignacio        D-17862

BOARD OF PRISON TERMS
Page 3: DECISION ON APPEAL                                    STATE OF CALIFORNIA

3. The prisoner contends that the Board is required to set a parole date pursuant to PC § 1170.2 (a) and PC § 2930 et seq.

**Appeal Denied:** The answer to the prisoner's contentions is found in appeal issue # 2, above.

Exhaustion of Remedies

Since all grounds for appeal must be included in the same appeal (15 CCR § 2052(a)(2)), this decision is the final administrative decision on all issues from the decision in question. No further appeals or requests for review based on the issues from this decision will be accepted.

PENA, Ignacio        D-17862

BPT 1041 (REV. 01/02)                                    JUL 0 8 2003

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region

1. CSP-S

2. _____

Log No. 02-00820

1.

2. _____

Category

Records

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME Pena, Ignacio | NUMBER D-17862 | ASSIGNMENT Hobby Clerk | UNIT/ROOM NUMBER 20-G-6-L |
|---|---|---|---|

A. Describe Problem: Appellant continuous confinement constitutes a deprivation of liberty without due process of law and in violation of equal protection of the laws guaranteed by the Fourteenth Amendment. The California Department of Corrections (CDC) has improperly modified the appellant's term of imprisonment as established and imposed by Penal Code (PC) Section (§) 190, adopted by the voter initiative in 1978 (Prop. 7; the Briggs Initiative, which repealed former PC, §190). The Briggs Initiative is analogous to the California Uniform Determinate Sentencing Act of 1976 (DSA) provision PC, §1170.2. On July 1, 1977 California's DSA went into effect replacing the Indeterminate Sentencing

If you need more space, attach one additional sheet. **CONTINUE ON ATTACHED SHEET**

B. Action Requested: Declaratory and Injunctive relief; immediate release from CDC' custody; computation review; emergency processing of appeal to prevent further irreparable injury.

Inmate/Parolee Signature: _Ignacio Pena_                   Date Submitted: 4-10-2002

INFORMAL LEVEL (Date Received: 4/22/02 & )

Staff Response: Appeal Denied. See attached

Staff Signature: McKeever, CCII                   Date Returned to Inmate: 10-24-02

FORMAL LEVEL

If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Staff's response omitted the material fact of the appellant's primary allegations: CDC under the duty of PC §2932(b) (As it was incorporated in PC §190 on Nov. 7, 1978) calculated his anticipated release date; and is restraining him of his liberty in violation of Due Process and Equal Protection of the Laws. COMPUTATION REVIEW REQUESTED.

Signature: _Ignacio Pena_                   Date Submitted: 5-8-02

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

RECEIVED
JUN 24 2002
APPEALS BRANCH

CDC Appeal Number: _____

Records

CONTINUED ATTACHED SHEET: INMATE APPEAL FORM

Name:  PENA, IGNACIO    Number: D-17862  Assignment: HOBBY CLERK    Unit: 29-G-6-L

Law (ISL). The purpose of the DSA is to achieve uniformity in sentencing. In keeping with the policy of uniform sentencing, the DSA further provides that Board of Prison Terms (BPT) must reset the prison terms for prisoner who had been sentenced under the ISL. Pursuant to PC, §1170.2(a) the BPT must then fix the parole date of the prisoner on the date calculated under PC, §1170.2(a), unless two members of the BPT determine that the prisoner should serve a term longer than that calculated. In that event, the BPT must give notice and a prompt hearing to the prisoner. The prisoner has the right to counsel and to be informed in writing of the reasons for the increase in his term over that computed in PC, §1170.2(a). Similarly, PC, §190 provides under the provisions of PC, §2930 et seq., a fixed parole release date for the appellant on the minimum term imposed under PC, §190. CDC' modification of the appellant's term of imprisonment in the state prison imposed pursuant to PC, §190 is beyond its jurisdiction, and constitute an invalid Legislative amendment to a law enacted by initiative. CDC' modification of appellant's term of imprisonment is the result of its administrative classification of appellant as a "Life Prisoner." A "life prisoner" is administratively defined as a "prisoner sentenced to life imprisonment, and without an established parole release date." Thus, consequently includes appellant's sentence. CDC' classification is clearly erroneous and unauthorized. It is based upon the mischaracterization of the facts and laws of appellant's sentence and the ancient notions and theory of the former ISL, that appellant has a sentence for the maximum, which is no longer valid under the DSA. Appellant argues that the CDC' calculation and classification modified the term of imprisonment imposed upon him which increased his sentence after his prison term had begun; that his release date was redetermined on account of misassumptions and facts overreaching the sentencing of appellant who has consequently been deprived of his release date that is based on an arithmetical computation prior to the expiration of his potential maximum punishment because of "good time" credit earned. Appellant contends that he has a sentence for the minimum until and unless a competent tribunal reset it at a greater punishment. The appellant is being confined in prison after he has completed the sentence imposed upon him by statute, because prison officials acting under color of state law, and whose acts or omissions in modifying his sentence caused deprivation of the appellant's rights to a fair adversary proceeding in which to fully present his case before a competent tribunal.

Ignacio Pena, D-17862                April 10, 2002
Name                                 Date
cc: Inmate

State of California

# Memorandum

Date : 4-24-02

To    :    **PENA, Ignacio**    D17862

From  :    California State Prison-Solano, Vacaville 95696-4000

Subject:    **INFORMAL LEVEL APPEAL RESPONSE**

You state you should be immediately released from California Department of Corrections (CDC) custody since you are not a "Life Prisoner". You are also requesting a computation review hearing.

You were received by CDC on November 14, 1985 from Santa Clara County, Case # 96973 for count 1 - Murder 2nd degree with a term of 15 years to life with a two year enhancement for use of a firearm. Your total term is 17 years to life.

Penal Code (PC), Section 190, states in part, **"...every person guilty of murder in the second degree shall be punished by imprisonment in the state prison for a term of 15 years to life."**

PC Section 1168 Fixing Term of Imprisonment, Section (b) states, **"For any person not sentenced under such provisions, but who is sentenced to be imprisoned in the state prison, including imprisonment not exceeding one year and one day, the court imposing the sentence shall not fix the term or duration of the period of imprisonment."**

PC Section 1170.2(e) states, **"In the case of any inmate who committed a felony prior to July 1, 1977, who would have been sentenced under Section 1168 if the felony was committed on or after July 1, 1977, the Board of Prison Terms shall provide for release from prison as provided for by this code."** Your commitment offense is one of the crimes that remain under PC Section 1168 after July 1, 1977.

You requested a Computation Review Hearing on this appeal. This is not a computation Review Hearing/Records issue. Per Administrative Bulletin 87/21, dated February 26, 1987, Subject: Haygood vs. Younger states in part, **"Inmates/parolees who are subject to the jurisdiction of the Department of Corrections may have a right to a Computation Review Hearing when they believe there is an error in the computation of a term of confinement or period of parole based upon the documentation in the records, and that adversely affects their term of confinement or period of parole."**

APPEAL: Denied.

MARTHA RUBALCABA
Correctional Case Records Analyst

EXHIBIT "A"

STATE OF CALIFORNIA
CDC 1031 (8/88)

DEPARTMENT OF CORRECTIONS

## ACKNOWLEDGEMENT OF RECEIPT

### I.   NOTICE OF RIGHT TO REQUEST A COMPUTATION REVIEW HEARING

Your administrative appeal has been reviewed by departmental staff at the informal level. In that appeal you alleged an issue which may adversely affect your term of confinement or period of parole. You may now request a Computation Review Hearing if you do not agree with the findings.

**Computation Review Hearing**

Whenever an inmate/parolee files an administrative appeal which sets forth a specific, clearly stated claim regarding an alleged error which adversely affects a term of confinement or period of parole, and that appeal is reviewed at the informal level, the inmate/parolee may then request a Computation Review Hearing if he/she is not satisfied with the findings. This hearing will be conducted as the second level of review of the inmate's/parolee's administrative appeal, and will afford full due process protections.

The **only** issue to be determined at a Computation Review Hearing is whether or not an error has been committed which adversely affects a term of confinement or period of parole.

If it is determined at the hearing that an error has occurred, departmental staff shall grant the appeal and correct the error or refer the matter to the attention of the appropriate agency or departmental staff for disposition. If it is determined that there is no error, the appeal will be denied.

If you wish to request a Computation Review Hearing, you must so state in Section D of your CDC-602, Inmate Appeal Form. This form should then be given to your Institution/Parole Region Appeals Coordinator for processing. You will be notified when a hearing has been scheduled.

### II.   COMPUTATION REVIEW HEARING RIGHTS

Prior to or at a Computation Review Hearing, an inmate/parolee shall be afforded the following:

a. The right to be notified in writing as soon as possible of the date, time and place at which the Computation Review Hearing will be conducted.

b. The right to review pertinent nonconfidential documents in his/her Central File before the hearing, and the opportunity to enter a written response to any material in the file.

c. The right to be present at the hearing and/or to speak on his or her own behalf, and to ask and answer questions.

d. The right to present relevant documents to the hearing panel.

e. The right to have the hearing conducted by a fair and impartial hearing panel.

f. The right to the assistance of an interpreter if he or she does not understand English. The Department shall provide an interpreter at state expense.

g. The right to staff assistance.

h. The right to receive written notice of any decision made, the information considered, and the reasons for the decision.

i. The right to appeal a Computation Review Hearing decision as provided in the Department's Administrative Manual (Chapter 7300).

### III.   ACKNOWLEDGEMENT

I hereby acknowledge receipt of "Notice of Right to Request a Computation Review Hearing" and "Computation Review Hearing Rights" form.

| ▶ _Clarence Reno_ | D-17862 | 5-2-02 |
|---|---|---|
| Signature of inmate/parolee | CDC Number | Date |

| ▶ _K. Elliott_ | CSP-S | 5-20-02 | ☑ Yes ☐ No |
|---|---|---|---|
| Signature of Employee | Inst/Region | Date | Interpreter Required |

(Print Last Name) _____

DISTRIBUTION:   ORIGINAL — CENTRAL FILE
                COPY — INMATE/PAROLEE

State of California

# Memorandum

Date:       June 7, 2002

To:         **PENA, IGNACIO       CDC # D-17862**

From:       California State Prison-Solano, Vacaville  95696-4000

Subject:    **SECOND LEVEL APPEAL RESPONSE, LOG # CSP-S-02-00820**

An interview was conducted by Karen Elliott, Correctional Case Records Supervisor on May 17, 2002, at approximately 1530 hours in Facility 3 Program Complex.

This is in response to your Second Level Appeal.   Please see enclosed response, per California Code of Regulations, Title 15, Section 3084.2 Appeal Preparation (g) Multiple appeals of the same issue.  If more than one appeal regarding the same issue is received:

1)  All such appeals shall be logged.

2)  A written response shall be given to the original appellant.

3)  A copy of the response, with the original appellant's name and number removed, shall be given to each of the other appellants.

**Tom L. Carey**
**Warden**


Attachments

State of California

# Memorandum

Date    :

To      :     

From    :    California State Prison-Solano, Vacaville  95696-4000

Subject:    **SECOND LEVEL APPEAL RESPONSE, LOG # CSP-S-02-00583**

An interview was conducted by Sarabjot (Tina) Kaur, Correctional Case Records Supervisor on April 19, 2002, at approximately 1530 hours in Facility 3 Program Complex.

### ISSUE

You believe that your Legal Status Summary (LSS) sheet is not in compliance with your sentence. You also believe that you were sentenced under Penal Code (PC) Section 1170 and are requesting a computation review hearing.

### FACTS

You were received by California Department of Corrections (CDC) as a life prisoner.

Penal Code (PC), Section 190 (a), states in part, **"Every person guilty of murder in the first degree shall be punished by death, imprisonment in the state prison for life without possibility of parole, or imprisonment in the state prison for a term of 25 years to life.....every person guilty of murder in the second degree shall be punished by imprisonment in the state prison for a term of 15 years to life."**

PC Section 1168 Fixing Term of Imprisonment, Section (b) states, **"For any person not sentenced under such provisions, but who is sentenced to be imprisoned in the state prison, including imprisonment not exceeding one year and one day, the court imposing the sentence shall not fix the term or duration of the period of imprisonment."**

PC Section 1170.2(e) states, **"In the case of any inmate who committed a felony prior to July 1, 1977, who would have been sentenced under Section 1168 if the felony was committed on or after July 1, 1977, the Board of Prison Terms shall provide for release from prison as provided for by this**

SECOND LEVEL APPEAL RESPONSE
LOG # CSP-S-02-00583
Page 2

code." Your commitment offense is one of the crimes that remain under PC Section 1168 after July 1, 1977.

The Offender Based Information System (OBIS) does not calculate or print a computerized LSS on certain lifer cases. Following is a list of commitment types that are not automated:

- Death sentences
- Life without parole sentences
- Lifers with monigold credit (lifers received by CDC prior to May 27, 1987)
- Lifers with 7 year and 9 year MEPDs
- Civil addict commitments
- 1 Year 1 Day commitments

Your LSS sheet has been recorded correctly within appropriate Departmental policies and a copy is attached to this response.

You requested a Computation Review Hearing on this appeal. This is not a computation Review Hearing/Records issue. Per Administrative Bulletin 87/21, dated February 26, 1987, Subject: Haygood vs. Younger states in part, **"Inmates/parolees who are subject to the jurisdiction of the Department of Corrections may have a right to a Computation Review Hearing when they believe there is an error in the computation of a term of confinement or period of parole based upon the documentation in the records, and that adversely affects their term of confinement or period of parole."**

## DETERMINATION

The only issue to be determined at a Computation Review Hearing is whether or not an error has been committed which adversely affects a term of confinement or period of parole. There is no issue of how your Minimum Eligible Parole Date was calculated. You were sentenced to serve an indeterminate term of imprisonment. The issue at hand is your release from the Department of Corrections. You were advised that this is a Board of Prison Terms issue as outlined earlier in this response.

**APPEAL: DENIED**

Tom L. Carey
Warden

Attachments

First Level   ☐ Granted   ☐ P. Granted   ☐ Denied   ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: 5-9-02   Due Date: 6-21-02

Interviewed by: _____

**BYPASS**

Staff Signature: _____ Title: _____ Date Completed: _____

Division Head Approved:

Signature: _____ Title: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

Signature: _____ Date Submitted: _____

Second Level   ☐ Granted   ☐ P. Granted   ☒ Denied   ☐ Other

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: 5/9/02   Due Date: 6/21/02

☒ See Attached Letter

Signature: _L Elliott_   _Carpenter, CSPR_   Date Completed: 5-21-02

Warden/Superintendent Signature: _____ Date Returned to Inmate: 6/7/02

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

JUN 11 2002

Second Level Review clearly erroneous and contrary to law and unauthorized:
(1) The hearing conducted at second level did not afford full due process protection;
(2) Records fails to record the actual minimum term imposed by statute of 15 years;
(3) CDC is holding appellant beyond his released date; and (4) Third Level Review exhaustion is futile. (see **In Re Strict**, (1983) !$* Cal.App.3d 906, 911) Note.
We are going straight to Court. Solano Superior Court.

Signature: _____ Date Submitted: June 19, 2002

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted   ☐ P. Granted   ☒ Denied   ☐ Other _____
☒ See Attached Letter

Date: 8-21-02

CDC 602 (12/87)

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA  94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date: **AUG 21 2002**

In re:     Pena, D-17862
California State Prison, Solano
P.O. Box 4000
Vacaville, CA  95696-4000

IAB Case No.: 0112857.           Local Log No.: SOL 02-00820

This matter was reviewed on behalf of the Director of the California Department of Corrections (CDC) by Appeals Examiner B. Sullivan. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that he should be immediately released from CDC custody because he is not a "life prisoner." He is requesting a Computation Review Hearing (CRH).

**II    SECOND LEVEL'S ARGUMENT:** It is staff's position that the appellant's concerns are not a Case Records issue and a CRH is not appropriate. Inmates who are subject to the jurisdiction of CDC may have a right to a CRH when they believe an error has occurred in the computation of a term of confinement or period of parole based upon documentation in the records that adversely affects their term of confinement or period of parole. There is no issue of how the appellant's Minimum Eligible Parole Date was calculated. The appellant was sentenced to serve an indeterminate term of imprisonment and is serving 17 years-to-life. The issue at hand is the appellant's release from CDC. The appellant was advised that his issue is a Board of Prison Terms (BPT) issue. The appeal was denied at Second Level of Review.

**III    DIRECTOR'S LEVEL DECISION:** Appeal is denied.

A.   **FINDINGS:** All documentation concerning this appeal issue was reviewed. The record clearly reflects that the appellant is ineligible for release from CDC. The appellant was committed to CDC, for a life-term sentence. The BPT determines parole dates for inmates with life-term sentences. The release date is determined by the BPT upon considering all case factors including the inmate's commitment offense, criminal history, incarceration behavior and suitability for release. The appellant's parole date rests with the BPT and his concerns should be presented to that panel during that review. Based upon the documentation reviewed by case records staff the appellant has received all of the time credits he is entitled within existing legal statutes and Departmental regulations. The appellant has not provided compelling argument to warrant modification of the decision reached by the institution.

B.   **BASES FOR THE DECISION:**
California Penal Code Section (PC): 190, 1168, 1170.2,
California Code of Regulations, Title 15, Section (CCR): 3043

C.   **ORDER:** No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to the appellant within CDC.

LINDA L. RIANDA, Chief
Inmate Appeals Branch

cc:     Warden, SOL
Appeals Coordinator, SOL

(b) Matrix of Base Terms for First Degree on or after November 8, 1978.

### CIRCUMSTANCES

| FIRST DEGREE MURDER Penal Code § 189 (25 years and does not include post conviction credit as provided in § 2290) | A. Indirect Victim died of causes related to the act of the prisoner but was not directly assaulted by prisoner with deadly force; e.g., shock producing heart attack; a crime partner actually did the killing. | B. Direct or Victim Contribution Death was almost immediate or resulted at least partially from contributing factors from the victim; e.g., victim initiated struggle or had goaded the prisoner. This does not include victims acting in defense of self or property. | C. Severe Trauma Death resulted from severe trauma inflicted with deadly intensity; e.g., beating, clubbing, stabbing, strangulation, suffocation, burning, multiple wounds inflicted with a weapon not resulting in immediate death or actions calculated to induce terror in the victim. | D. Torture Victim was subjected to the prolonged infliction of physical pain through the use of nondeadly force prior to act resulting in death. |
|---|---|---|---|---|
| I. Participating Victim Victim was involved in a criminal act with the prisoner during which or as a result of which the death occurred; e.g., crime partner, drug dealer, etc. | 25–26–27 | 26–27–28 | 27–28–29 | 28–29–30 |
| II. Prior Relationship Victim was involved in a personal relationship with prisoner (spouse, family member, friend, etc.) which contributed to the motivation for the act resulting in death. If victim had a personal relationship but prisoner hired and/or paid a person to commit the offense, see Category IV. | 26–27–28 | 27–28–29 | 28–29–30 | 29–30–31 |
| III. No Prior Relationship Victim had little or no personal relationship with prisoner; or motivation for act resulting in death was related to the accomplishment of another crime; e.g., death of victim during robbery, rape, or other felony. | 27–28–29 | 28–29–30 | 29–30–31 | 30–31–32 |
| IV. Threat to Public Order or Murder for Hire The act resulting in the victim's death constituted a threat to the public order and/or include the murder of a police officer, prison guard, public official, fellow patient or prisoner, any killing within an institution, or any killing where the prisoner hired and/or paid another person to commit the offense. | 28–29–30 | 29–30–31 | 30–31–32 | 31–32–33 |

**SUGGESTED BASE TERM**

(c) Matrix of Base Terms for Second Degree Murder on or after November 8, 1978.

### CIRCUMSTANCES

| SECOND DEGREE MURDER Penal Code § 189 (16 years and does not include post conviction credit as provided in § 2290) | A. Indirect Victim died of causes related to the act of the prisoner but was not directly assaulted by prisoner with deadly force; e.g., shock producing heart attack; a crime partner actually did the killing. | B. Direct or Victim Contribution Death was almost immediate or resulted at least partially from contributing factors from the victim; e.g., victim initiated struggle or had goaded the prisoner. This does not include victims acting in defense of self or property. | C. Severe Trauma Death resulted from severe trauma inflicted with deadly intensity; e.g., beating, clubbing, stabbing, strangulation, suffocation, burning, multiple wounds inflicted with a weapon not resulting in immediate death or actions calculated to induce terror in the victim. |
|---|---|---|---|
| I. Participating Victim Victim was accomplice or otherwise implicated in a criminal act with the prisoner during which or as a result of which the death occurred; e.g., crime partner, drug dealer, etc. | 15–16–17 | 16–17–18 | 17–18–19 |
| II. Prior Relationship Victim was involved in a personal relationship with prisoner (spouse, family member, friend, etc.) which contributed to the motivation for the act resulting in death. If victim had a personal relationship but prisoner hired and/or paid a person to commit the offense, see Category IV. | 16–17–18 | 17–18–19 | 18–19–20 |
| III. No Prior Relationship Victim had little or no personal relationship with prisoner; or motivation for act resulting in death was related to the accomplishment of another crime; e.g., death of victim during robbery, rape, or other felony. | 17–18–19 | 18–19–20 | 19–20–21 |

**SUGGESTED BASE TERM**

NOTE: Authority cited: Section 5076.2, Penal Code. Reference: Sections 3040 and 3041, Penal Code.

#### HISTORY

1. Editorial correction filed 10–8–81; effective thirtieth day thereafter (Register 81, No. 41).
2. Amendment of subsection (a) filed 1–20–88; operative 2–19–88 (Register 88, No. 5).
3. Change without regulatory effect amending subsection (a) to clarify the applicability of the matrices in subsections (b) and (c) when setting the base term for prisoners sentenced to prison for attempted murder, filed 2–16–2001 pursuant to section 100, title 1, California Code of Regulations (Register 2001, No. 7).

### § 2404.  Circumstances in Aggravation of the Base Term.

(a) General. The panel may impose the upper base term or another term longer than the middle base term upon a finding of aggravating circumstances. Circumstances in aggravation of the base term include:

(1) The crime involved some factors described in the appropriate matrix in a category higher on either axis than the categories chosen as most closely related to the crime;

(2) The victim was particularly vulnerable;

(3) The prisoner had a special relationship of confidence and trust with the victim, such as that of employee–employer;

(4) The murder was committed to preclude testimony of potential or actual witnesses during a trial or criminal investigation;

(5) The victim was intentionally killed because of his race, color, religion, nationality or country or origin;

(6) During the commission of the crime the prisoner had a clear opportunity to cease but instead continued;

Register 2001, No. 11; 3–16–2001

## Range Difference of Matrix Base Terms
### 1st & 2nd Degree Murder Offenses, After November 30, 1978

| Murder Offense | Statutory Base Term | Matrix Maximum Base Term | | Matrix Minimum Base Term | | Difference Range of Matrix Years (min. to max.) |
|---|---|---|---|---|---|---|
| 1st Degree (new law) | 25 yr. to life | 33 yr. | — | 25 yr. | = | 8 yr. range |
| 2nd Degree (new law) | 15 yr. to life | 21 yr. | — | 15 yr. | = | 6 yr. range |

## Conduct Credits

Although prisoners convicted of 1st & 2nd degree murder after November 30, 1978 can become eligible for parole consideration in 2/3 of the statutory base term through CDC conduct credits[1], the prisoner is not actually eligible for parole until they have served the CCR matrix base term appropriate to the offense as established by the Board of Prison Terms, which range from 15 to 21 years for a 2nd degree murder offense, and 25 to 33 years for a first degree murder offense[2]. While the base term selected also incorporates any aggravating or mitigating factors the board may find[3] it does not include additional factors for which the board may also impose additional enhancements to the base term.[4]

## Earliest Parole Hearing
### (advance of actual parole eligibility)

| Base Term | Earliest Possible Hearing |
|---|---|
| 15 to life | (107 mo.) or 8 yr. 11 mo. into term |
| 25 to life | (187 mo.) or 15 yr. 7 mo. into term |

The earliest possible parole consideration hearing (AKA Initial Hearing) is established at 2/3 of the statutory (not CCR matrix) base term for the offense minus 13 additional months, and only after any determinate, consecutive sentences to the offense are completed.

---

[1] CCR 2400  ( all cites to CCR Title 15 sections)

[2] The exact matrix base term applicable depends on identifiable elements of the offense set forth in CCR 2403 (b) & (c) Matrix, and application of any mitigating or aggravating factors the board may find and apply to raise or lower the base term from its suggested mid range. CDC conduct credits which establish the Initial parole hearing are distinguishable from those applied by the BPT to reduce the actual sentence. (CCR 2400)

[3] CCR 2404 & 2405, Circumstances Aggravating and Mitigating Base Term.

[4] CCR 2406 to 2409, Adjustments for Weapons, Great Loss, Prior Prison Terms, Other Offenses & factors to mitigate or aggravate Adjustments for Other Offenses.

## Minimum Time In Years For Parole Eligibility On Matrix Base Terms With Application Of Average Credits To Statutory Base Terms For 1st & 2nd Degree Murder Offenses

| A | B | C | A | B | C |
|---|---|---|---|---|---|
| 15 to Life w/Matrix Base Terms | Credit Avail. on Term/ Average Amt. | Total Term After Credit Applied | 25 to Life w/Matrix Base Terms | Credit Avail. on Term/ Average Amt. | Total Term After Credit Applied |
| 15 yr. | 3.62 yr. | 11.38 yr. | 25 yr. | 6.19 yr. | 18.81 yr. |
| 16 yr. | 3.84 yr. | 12.16 yr. | 26 yr. | 6.44 yr. | 19.56 yr. |
| 17 yr. | 4.07 yr. | 12.93 yr. | 27 yr. | 6.69 yr. | 20.31 yr. |
| 18 yr. | 4.29 yr. | 13.71 yr. | 28 yr. | 6.94 yr. | 21.06 yr. |
| 19 yr. | 4.51 yr. | 14.49 yr. | 29 yr. | 7.19 yr. | 21.06 yr. |
| 20 yr. | 4.74 yr. | 15.26 yr. | 30 yr. | 7.44 yr. | 22.56 yr. |
| 21 yr. | 4.96 yr. | 16.04 yr. | 31 yr. | 7.69 yr. | 23.31 yr. |
|  |  |  | 32 yr. | 7.94 yr. | 24.06 yr. |
|  |  |  | 33 yr. | 8.19 yr. | 24.81 yr. |

The A & B columns shown for Matrix Base Terms and Credit Average for the term (based on time actually served) could also be substituted with, (for example) a total term of different composition than a simple base term (prior to application of credits), and the credits indicated (B) would still be applicable in the averaged amounts shown. For instance, if the board determined the prisoner had a 16 year base term, but then added an additional 3 years for enhancement factors, the total term would be 19 years (A), reducible by 4.51 years credit (B) for a total term of confinement (after reduction by credits earned) amounting to 14.19 years (C). The Total Term After Credit Applied column (C) represents how much time in calander years the prisoner *must* serve before being paroled or <u>actually</u> "eligible" to parole, with application of the average amount of credits available. In order for prisoners to receive the benefit of credits that would be available to them to reduce the total term, they would have to be found "parole suitable" by the Board *prior* to serving the time indicated in column C, otherwise they lose the value of credits earned to reduce the sentence by remaining in prison beyond the time they could have been released with application of credits to the term.

Time credits: Life prisoners are ordinarily "granted" 4 months of credit for good behavior on each year served. Credit is only granted on the statutory base term and not on any higher term that may be imposed under the administrative matrix.[12] The amount of credit actually granted in the prisoner's case on the base term is subject to vary depending on how much of the statutory base term is completed before a date is established and how long the ultimate matrix base term established is. Depending on how credits are calculated and applied, it is possible for a prisoner with the longest matrix base term to receive more credit against the statutory base term simply because their sentence requires them to spend more time in prison, thus more credits can be accumulated on the statutory base term in reduction of the overall term.

---

[12] In Re Dyan (supra).

HISTORY
1. Repealer of subsection (a) and relettering of subsection (b) to subsection (a) filed 12–22–82 by OAL pursuant to Government Code Section 11349.7(j) (Register 82, No. 52).

## § 2322. Adjustments for Preconviction Factors.

(a) Criminal History. The prisoner's criminal history may increase the total period of confinement, but if the criminal history is old (the prisoner was released from federal, state or local custody after conviction of a felony and not returned to federal, state or local custody for a period of five years from the date of release) the criminal history shall not be used to adjust the total period of confinement unless the conduct which resulted in the criminal history forms a pattern with the current commitment crimes. The period of confinement shall not be increased for convictions, or prior prison terms resulting from convictions, that have been reversed in court or pardoned by the executive. When old criminal history is used to extend the total period of confinement, the hearing panel shall document the pattern of conduct.

Criminal history falls into four categories, each of which is mutually exclusive. Types of criminal history which shall be considered are:

(1) Prior Prison Terms. Felony convictions which were so serious that they resulted in a prison sentence shall be given the greatest weight. A prior prison term is one for which the prisoner was committed to prison and paroled or discharged or may be a prison term that has not been discharged if a prisoner is convicted of new crimes during his commitment for other crimes. A previous commitment to prison for several crimes shall be treated as a single prison term. Prior prison terms include any conviction in a state or federal court which resulted in the individual's having actually served a prison term in any state or federal prison for an offense which would be a felony in California or previous commitments to the Department of Corrections where the prisoner was released on parole and returned as a parole violator with new term.

Each prison term shall be evaluated for the seriousness of the conduct which resulted in the prison term to determine whether it warrants increasing the total period of confinement.

(2) Prior Felony Convictions Pled and Proven. Prior felony convictions which did not result in a prison term, but which were pled and proven as part of the current sentence to prison are usually given lesser weight than prior prison terms.

(3) Other Convictions. Other criminal conduct which resulted in conviction, but did not result in a prison term and was not pled and proven as part of the present sentence to prison is usually given least weight.

(4) Lack of Criminal History. A complete lack of or very minor criminal history may reduce the total period of confinement.

(b) Other Preconviction Factors. Other preconviction factors may also affect the total period of confinement. Examples of other preconviction factors include the prisoner's personal and social history, family and marital history, employment history, intelligence and education, skills already acquired and physical and emotional health.

NOTE: Authority cited: Section 5076.2, Penal Code. Reference: Sections 1170.2, 3041, and 3060, Penal Code.

HISTORY
1. Amendment of subsection (a) filed 1–25–79; effective thirtieth day thereafter (Register 79, No. 4).
2. Amendment of subsection (a) filed 10–25–79; effective thirtieth day thereafter (Register 79, No. 43).

## § 2323. Adjustments for Commitment Factors.

(a) Multiple Crimes. The total period of confinement may be increased for multiple crimes. Multiple crimes are crimes in addition to the base crime which resulted in commitment to prison and occurred prior to arrival in prison. If the prisoner has been in prison prior to the current commitment, multiple crimes are crimes which were committed after the most recent release from prison. Any increase in the total period of confinement shall be commensurate with the severity of the crime.

(b) Sentencing Status. The total period of confinement may be increased or decreased because of the prisoner's sentencing status. A con-

secutive sentence to prison imposed by the court under Penal Code # 669 or required by statute may be interpreted as a recommendation for severity and the total period of confinement may be increased. A sentence for a youthful offender under Penal Code # 1202b may be interpreted as a recommendation for leniency by the committing court and the total period of confinement may be decreased. In making any adjustment for a prisoner's sentencing status, the hearing panel shall give consideration to any statements made by the committing court under Penal Code # 1203.01, 3022 or 3042.

These adjustments to the parole date may occur in addition to the effect the sentence has on the prisoner's minimum or maximum term and minimum eligible parole date.

NOTE: Authority cited: Section 5076.2, Penal Code. Reference: Section 1170.2, Penal Code.

HISTORY
1. Amendment of subsection (a) filed 4–4–78; effective thirtieth day thereafter (Register 78, No. 14).

## § 2324. Adjustments for Postconviction Factors.

(a) Prison Crimes. The hearing panel may increase the total period of confinement for crimes which occurred in prison.

(1) Court Convictions: New Prison Commitment. The parole date for these offenses shall be established as provided in § 2328.

(2) Court Conviction: No New Prison Commitment. The total period of confinement may be increased for court convictions which did not result in a new prison commitment and which occurred since arrival in prison but before a parole date is granted.

Court convictions which occur after a parole date is granted may increase the total period of confinement only after rescission proceedings. See Chapter 4.

(3) Disciplinary Offenses. The total period of confinement may be increased for serious disciplinary offenses which occurred since arrival in prison but before a parole date is granted. Only disciplinary offenses which might have resulted in rescission proceedings after a parole date has been granted shall affect the total period of confinement. These offenses are specified in § 2451. Serious disciplinary offenses which occur after a parole date is granted may increase the total period of confinement only after rescission proceedings. See Chapter 4.

(b) Other Postconviction Factors. The total period of confinement may be decreased for other postconviction factors. Factors that may reduce the period of confinement include:

(1) Achievement of significant skills which substantially reduce the likelihood that new crimes will be committed.

(2) Significant improvement in self-control, such as may be demonstrated over a period of time by good conduct, good work habits, and good relationships with others.

(3) Outstanding work performance.

(4) Acceptance of new responsibilities indicating an increased ability to lead a crime-free life.

(5) Assistance in maintaining prison order.

(6) Constructive use of leisure time.

(7) Support from the community as demonstrated by visits and assistance from members of the community.

(8) Unusual service to the community.

(9) Positive efforts to develop community resources.

(10) Cell study and other academic achievement.

(11) Voluntary work assignments.

(12) Significant participation and demonstrated progress in psychiatric or self-improvement programs.

(13) Substantial gains in alleviating the personal condition which caused the crime.

(14) Changes in circumstances such as elimination of or substantial change in the personal, economic or social factors involved in the crime or change in the circumstances or environment into which the prisoner is to be released.

(c) Amount and Criteria. The criteria for earning credit and the amount of credit to be granted are specified in § 2290(b)–(d).

Register 2001, No. 11; 3–16–2001

NOTE: Authority cited: Section 5076.2, Penal Code. Reference: Sections 667.51, 3040 and 3041, Penal Code; In re Stanley, 54 Cal.App.3d 1 (1976).

The parole date shall be determined as provided in Section 2411.

NOTE: Authority cited: Section 5076.2, Penal Code. Reference: Sections 667.51, 669, 1203.2a and 2900, Penal Code.

### § 2439.1.  Fixing a Parole Date.

The parole date shall be determined as provided in Section 2411.

NOTE: Authority cited: Section 5076.2, Penal Code. Reference: Sections 667.51, 669, 1203.2a and 2900, Penal Code.

## Chapter 4.  Postponement or Rescission of Release

## Article 1.  Initiating Proceedings

### § 2450.  General.

The ISL parole date of an ISL prisoner or the parole date of a life or non–life 1168 prisoner may be postponed or rescinded for good cause at a rescission hearing. Rescission proceedings refer to any proceedings which may result in the postponement or rescission of a release date.

NOTE: Authority cited: Sections 3052 and 5076.2, Penal Code. Reference: Sections 3041, 3041.5 and 3041.7, Penal Code.

HISTORY
1. Amendment of section and new NOTE filed 1–13–2000; operative 2–12–2000 (Register 2000, No. 2).

### § 2451.  Reportable Information.

Department staff shall report to the Board at the central office calendar conduct which may result in rescission proceedings. The Board shall determine whether to initiate rescission proceedings. Examples of conduct which must be reported to the Board include:

(a) Disciplinary Conduct.
(1) Assault with a weapon.
(2) Escape.
(3) Physically assaultive behavior.
(4) Possession of a weapon without permission.
(5) Possession of controlled substances without a prescription.
(6) Attempt to escape.
(7) Urging others, with the intent to cause a riot, to commit acts of force or violence, at a time and place and under circumstances which produce a clear and present and immediate danger of a riot which results in acts of force or violence.
(8) Intentional destruction of state property valued in excess of $50.
(9) Falsification of a significant record or document.
(10) Possession of escape tools without permission.
(11) Manufacture or sale of intoxicants.
(12) Threatening the Board or Board staff.
(13) Other conduct which seriously disrupts institutional routine, or which strongly indicates that the prisoner is not ready for release, or which indicates that the prisoner is a danger to himself or others, or which Department staff believes should be reported to the Board.

(b) Psychiatric Deterioration. Any prisoner whose mental state deteriorates to the point that there is a substantial likelihood that the prisoner would pose a danger to himself or others when released, and who is within 90 days of release, shall be reported to the Board.

(c) Fundamental errors occurred, resulting in the improvident granting of a parole date.

(d) Other. Any new information which indicates that parole should not occur. Examples include: an inability to meet a special condition of parole, such as failure of another state to approve an interstate parole; or information significant to the original grant of parole was fraudulently withheld from the Board.

NOTE: Authority cited: Sections 3052 and 5076.2, Penal Code. Reference: Section 3040, Penal Code.

HISTORY
Editorial correction (Register 79, No. 38).

2. Amendment of section and new NOTE filed 1–13–2000; operative 2–12–2000 (Register 2000, No. 2).

### § 2452.  Procedure for Reporting.

(a) Reporting. Department staff shall report to the Board at the central office calendar any life, non–life 1168 or ISL prisoner who must be reported under § 2451.

(b) Time of Report. All cases shall be reported to the Board prior to the prisoner's scheduled release date.

If the case has not been referred to the District Attorney for prosecution, the case shall be reported to the Board within 15 days of the conduct or the discovery of information leading to disciplinary charges.

If the case has been referred to the District Attorney for prosecution, the case should be reported to the Board on the earliest of the following dates:

(1) 60 days before the prisoner's parole date;

(2) Within 15 days of the date upon which the District Attorney notifies the Department that the county will not prosecute the case;

(3) Within 15 days of the date of the criminal prosecution. These time limits are directory only, and the Board may hold a rescission hearing if these time limits are not met in a particular case.

NOTE: Authority cited: Sections 3052 and 5076.2, Penal Code. Reference: Sections 1170.2 and 3041, Penal Code.

HISTORY
1. Amendment of subsection (b) filed 6–11–79; effective thirtieth day thereafter (Register 79, No. 24).
2. Repealer of subsections (c) and (d) filed 12–22–82 by OAL pursuant to Government Code Section 11349.7(j) (Register 82, No. 52).
3. Amendment of section and new NOTE filed 1–13–2000; operative 2–12–2000 (Register 2000, No. 2).

### § 2453.  Pre–Rescission Hearings.

(a) Scheduling. If the prisoner is scheduled to be released within 20 days, a criminal prosecution is pending, and the criminal prosecution will not terminate before the scheduled release date, Department staff shall schedule a pre–rescission hearing. The prisoner may waive the pre–rescission hearing.

A prisoner who has had or has waived a pre–rescission hearing on any one charge which alone is sufficiently serious to postpone or rescind the release date, is not entitled to a pre–rescission hearing on any other charges.

(b) Time Limits. Pre–rescission hearings should occur before the scheduled release date. Any delay beyond the scheduled release date must be authorized by the Board at the central office calendar.

NOTE: Authority cited: Sections 3052 and 5076.2, Penal Code. Reference: Sections 3041.5 and 3060, Penal Code.

HISTORY
1. Amendment of section heading and section and new NOTE filed 1–13–2000; operative 2–12–2000 (Register 2000, No. 2).

### § 2454.  Scheduling Rescission Hearings.

The time limits specified in this section are directory, and failure to meet the time limits does not deprive the Board of jurisdiction to hold the hearing. Department staff shall schedule rescission hearings as follows:

(a) New Commitment. If the prosecution terminates in a sentence to state prison prior to the scheduled rescission hearing, the rescission hearing shall be cancelled, and the prisoner shall be scheduled for a parole hearing as provided in § 2308(c).

If the prosecution terminates in a sentence to state prison after a rescission hearing, the action at the rescission hearing shall be vacated, and the prisoner shall be scheduled for a parole hearing as provided in § 2308(c).

(b) Definitions.

(1) Days. Time must be computed in calendar days. If a due date falls on a weekend or holiday, the due date will be the next working day.

(2) Termination of Criminal Prosecution. Criminal prosecution shall be considered terminated when any one or more of the following occur:

(A) The prisoner has been sentenced.
(B) The criminal charges are dismissed for any reason.
(C) The prisoner has been acquitted.
(D) The prisoner has been granted immunity from further prosecution.

Register 2000, No. 2; 1–14–2000

# EXHIBIT G

**F I L E D**

JAN 0 4 2005

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of CA, County of Santa Clara

_____ DEPUTY

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA CLARA

|  |  |
|---|---|
| In re | ) |
|     IGNACIO POLVOS PENA, | ) |
| On Habeas Corpus | ) |

No.: 96973

ORDER

The habeas corpus petition of IGNACIO POLVOS PENA, hereinafter Petitioner, is denied.  From an examination of the proceedings and the statement of decision it appears that the denial of parole is supported by the evidence before the Board.  Further, there has been no violation of the plea agreement; since Petitioner was considered for parole and had the opportunity that it be granted after serving the equivalent of only 17 years.  Neither at that time, nor now, does it appear that Petitioner is ready for release.

The evidence that Petitioner encountered his victim, left the scene to retrieve a weapon, returned and laid in wait, and

1   ultimately fired seven shots at the unsuspecting victim at close

2   range, ~~does support~~ the finding that the committing offense was

3   carried out in an especially cruel and callous manner and that

4   Petitioner poses an unreasonable risk to public safety.  His failure

5   to upgrade vocationally and failure to develop any parole plans, and

6   the opposition of the investigating and prosecuting agencies further

7   support the decision.

8       The framework within which a parole decision is made provides

9   that parole is the rule and not the exception.  (*In re Smith* (2003)

10  114 Cal.App.4th 343, 351.)  Furthermore, the crime alone cannot

11  forever be grounds for a parole denial without regard to all other

12  factors. (*Biggs v. Terhune* (2003) 334 F.3d 910, 916.)  This may be

13  especially so when there has been a plea bargain in which the People

14  have stipulated that the crime is no more than of the second degree.

15  (See e.g. *People v. Gipson* (2004) 117 Cal.App.4th 1065 and *People v.*

16  *Letteer* (2002) 103 Cal.App.4th 1308 regarding plea bargains as

17  contracts.)  But the determination of whether or not Petitioner

18  presents a danger to society necessarily begins with recognition of

19  the fact that he has established that danger by carrying out the

20  committing offense.  Thus, his performance in prison is of the utmost

21  importance.  He must show that he has made efforts towards, and had

22  success in achieving personal growth and change since the time of his

23  commitment.  This may be demonstrated by attendance at group programs

24  and meetings on topics relevant or related to the criminal conduct

25  and development of skills and trades, without which there is a real

26  likelihood of failure or slippage into past patterns when released

27  from the highly structured environment of prison.

28

1   In this case, the totality of the record tends to indicate that

2   Petitioner has not substantially changed from the person who

3   committed the murder of Amador Mendoza Valencia.  This case is unlike

4   *Brown v. Poole* (2003) 337 F.3d 1155 because Petitioner has not been a

5   model prisoner and has not made necessary efforts at personal growth

6   and development of skills needed to succeed on parole and become a

7   law abiding person.

8       The petition is denied.

9

10

11

DATED: _Dec. 30_ , 2004    _Linda R. Condron_

12                    LINDA CONDRON

13                    JUDGE OF THE SUPERIOR COURT

14

cc:  Petitioner (at CSP Solano)

15       Petitioner's Attorney (Jack Gordon)

     Attorney General (Brian Walsh)

16       District Attorney (Margo Smith)

     CJIC

17

18

19

20

21

22

23

24

25

26

27

28

3

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SANTA CLARA

PEOPLE OF THE STATE OF CALIFORNIA )
                          Plaintiff, )        **CASE NO.** 96973
                                )
           VS               )
                                )
                                )
Ignacio Polvos Pena,            )
—————————————— )

PROOF OF SERVICE BY MAIL OF: ORDER TO SHOW CAUSE

CLERKS CERTIFICATE OF MAILING;

I CERTIFY THAT I AM NOT A PARTY TO THIS CAUSE AND THAT A TRUE COPY OF THIS DOCUMENT WAS MAILED FIRST CLASS POSTAGE PREPAID IN A SEALED ENVELOPE ADDRESSED AS SHOWN BELOW AND THE DOCUMENT WAS MAILED AT SAN JOSE, CALIFORNIA ON *January 5, 2005*

Dated: *Jan 5, 2005*

                                     KIRRI TORRE
                                     County Clerk

                                 By: *Lydia Gonzalez*
                                    Lydia Gonzalez

Ignacio Polvos Pena
CSP-Solono Unit -21
P.O. Box 4000
Vacaville, Ca 95696-4000

CJIC/Hall of Justice
190 W. Hedding Street
San Jose, CA 95110
(placed in inter-office box)

Brian Walsh
Deputy Attorney General
455 Golden Gate Ave, Suite 11000
San Francisco, CA 94102-7004

Research Attorney's/Hall of Justice
190 W. Hedding Street
San Jose, CA 95110
(placed in inter-office box)

# PROOF OF SERVICE BY MAIL

## BY PRISONER "IN PRO PER"

I hereby certify that I am over the age of 18 years of age, that I am representing myself, and that I am a prison inmate.

My prison address is:    California State Prison - Solano
Housing: 15-E2-Low
P.O. Box 4000
Vacaville, California 95696-4000

On the "*date*" specified below, I served the following document(s) on the parties listed below by delivering them in an envelope to prison authorities for deposit in the United States Mail pursuant to the "Prison Mailbox Rule":

Case Name: In re: Ignacio Polvos Pena          Case #: _____

Document(s) Served: ORIGINAL PETITION FOR WRIT OF HABEAS CORPUS WITH EXHIBITS A-G

The envelope(s), with postage fully pre-paid or with a prison Trust Account Withdrawal Form attached pursuant to prison regulations, was/were addressed as follows:

COURT OF APPEAL, SIXTH APPELLATE DISTRICT
333 W SANTA CLARA STREET, #1060
SAN JOSE, CALIF. 95113-1717

I declare under penalty of perjury that the foregoing is true and correct. This declaration was executed on 10-30-2005 _____, in Vacaville, California.

          "date"

Signature: *Ignacio Pena*

Printed Name: *Ignacio P. Pena*

Case # (if applicable): _____            _____ 10-30- _____, 2005

To:        **CLERK OF THE COURT**
           [ ] SUPERIOR COURT                    [ ] FEDERAL DISTRICT COURT
           [x] COURT OF APPEAL                   [ ] FEDERAL COURT OF APPEAL
           [ ] CALIFORNIA SUPREME COURT          [ ] U.S. SUPREME COURT

From:      Ignacio Polvos Pena                   CDC #: D-17862
           California State Prison - Solano
           Housing: 15-E2-Low
           P.O. Box 4000
           Vacaville, California 95696-4000

Re:        [x] PETITION FOR WRIT OF HABEAS CORPUS
           [ ] PETITION FOR REHEARING/RECONSIDERATION
           [ ] PETITION FOR REVIEW
           [ ] BRIEF ON APPEAL
           [ ] MOTION TO COURT

Case:      [ ] IN RE  IGNACIO POLVOS PENA
           [ ] PEOPLE v. _____
           [ ] OTHER: _____

Dear Clerk:

   I am presently incarcerated at the California State Prison - Solano, in Vacaville.  Due to my incarceration, indigency or minimal funds, and the current policy of the California Department of Corrections as stated in Deputy Director Memorandum 15/04, I cannot provide the required number of copies as required by the Rules of Court.

   Therefore, I must respectfully request that the court make the required additional copies and to serve any required copies on other parties as necessary.

   Furthermore, please send a conformed copy of the documents back to me as a receipt of filing.  I apologize for any inconvenience that this may have caused.

                                                 Respectfully submitted,

                                                 _____

COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION 111754

In re IGNACIO POLVOS PENA,

on Habeas Corpus.

A111754

(Santa Clara County
Super. Ct. No. 96973)

FILED

OCT 2 6 2005

Court of Appeal - First App. Dist.
DIANA HERBERT

By_____
DEPUTY

BY THE COURT:[1]

This petition is appropriately filed in the Sixth Appellate District, 333 W Santa

Clara Street, #1060, San Jose, CA 95113-1717, as it challenges ~~a determination that~~ Plea Agreement.

~~petitioner is unsuitable for parole.~~ Violation. His underlying conviction is from the Santa Clara

County Superior Court.  (*In re Roberts* (2005) 36 Cal.4th 575.)

Therefore, the petition is denied without prejudice.

The Clerk of this Court is directed to make a copy of the petition, excluding

exhibits, to retain as a duplicate original for this Court's files.  The original petition with

its exhibits shall be returned to petitioner along with his copy of this order.

Date:  OCT 2 6 2005                    MARCHIANO, P.J.  P.J.

_____

[1] Before Marchiano, P.J., Stein, J., and Swager, J.